**No. 22-15102**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

MATHEW K. HIGBEE &
THE LAW FIRM OF HIGBEE & ASSOCIATES, APC,
*Counterclaim Defendants - Appellants,*
v.

4INTERNET, LLC,
*Counterclaim Plaintiff - Appellee.*

On Appeal from the United States District Court
for the District of Nevada
Hon. Jennifer A. Dorsey
No. 2:18-cv-02097

---

### APPELLANTS' OPENING BRIEF

---

Mathew K. Higbee
Ryan E. Carreon
Naomi M. Sarega
**HIGBEE & ASSOCIATES**
1504 Brookhollow Drive, Suite 112
Santa Ana, California 92705
Tel: 714-617-8336
mhigbee@higbee.law
rcarreon@higbee.law
nsarega@higbee.law

*Attorneys for Counterclaim Defendants - Appellants Mathew K. Higbee*
*& The Law Firm of Higbee & Associates, APC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... iii

STATEMENT OF JURISDICTION ....................................................... 1

ISSUES PRESENTED ........................................................................ 3

SUMMARY OF THE ARGUMENT ..................................................... 4

STATEMENT OF THE CASE ............................................................. 7

I.     INTRODUCTION ......................................................................... 7

      A.    4Internet Responds To A Simple Copyright Infringement Lawsuit By Suing Its Adversary's Attorney For Computer Fraud .......................... 7

      B.    Despite Dismissal 4Internet Doubles Down By Adding An Additional Claim Against H&A For Conspiracy ..................................................... 9

      C.    4Internet Continues Its Barrage Of Personal Attacks. ........................ 10

      D.    The District Court Acknowledges 4Internet Likely Acted In Bad Faith But Denies H&A's Request for §1927 Sanctions. ............................... 11

STANDARD OF REVIEW ................................................................. 13

I.     THE DISTRICT COURT ERRED BY FAILING TO APPLY § 1927 TO 4INTERNET'S ORIGINAL CLAIMS AGAINST H&A ............................. 14

      A.    Counterclaims And Third-Party Claims Are Not Initial Pleadings. ... 14

      B.    It Is Clear That The Counterclaims Against H&A Were Intended To Be Vexatious In Nature ....................................................................... 16

II.    THE DISTRICT COURT ERRED IN FINDING THAT THE SPEED OF ITS RULING EXCUSED 4INTERNET'S CONDUCT ............................... 22

III.   CONCLUSION ........................................................................... 25

ii

# TABLE OF AUTHORITIES

## Cases

*B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002) ........................17

*Babb v. Superior Court of Sonoma County*, 479 P.2d 379, 382 (Cal. 1971)...........17

*Badger Cab Co., v. Soule*, 492 N.W.2d 375, 60 (Wis. Ct. App. 1992)...................17

*Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015) ................................................................................................................17

*Braunstein v. Ariz. DOT*, 683 F.3d 1177  (9th Cir. 2012) .......................................22

*Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001) ............................................17

*hiQ Labs, Inc. v. LinkedIn Corporation,* 938 F.3d 985, 999 (9th Cir. 2019) ..........18

*In re Adbox, Inc.*, 488 F.3d 836, 840 (9th Cir. 2007) ..............................................14

*Kaass Law v. Wells Fargo Bank, Nat'l Ass'n*, 799 F.3d 1290, 1292 (9th Cir. 2015) ................................................................................................................13

*Kirschner v. Blixseth*, 2012 U.S. Dist. LEXIS 183275, at *73 (C.D. Cal. Nov. 1, 2012)........................................................................................................................15

*Lydon v. Shaw*, 372 N.E.2d 685, 688 (Ill. Ct. App. 1978) ......................................17

*Malec Holdings II Ltd. v. English*, 217 Fed. Appx. 527, 530 (7th Cir. 2007).........17

*Malibu Media, LLC v. Does*, 950 F. Supp. 2d 779, 780 n.1 (E.D. Pa. 2013)..........20

*Matsushita Elec. Indus. Co. v. CMC Magnetics Corp.*, 2007 U.S. Dist. LEXIS 7798, at *19 (N.D. Cal. Jan. 12, 2007) ....................................................................16

*MGIC Indem. Corp. v. Moore*, 952 F.2d 1120, 1122 (9th Cir. 1991) .....................15

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.,* 2014 WL 1724478, at *8 (N.D. Cal. Apr. 29, 2014) ...............................................................................................20

*Mirch v. Frank*, 266 Fed. Appx. 586, 588 (9th Cir. 2008) .................................4, 15

*Mont-Bell Co. Ltd v. Mountain Hardwear, Inc.*, 1998 WL 101741, at *1 (N.D. Cal. Feb. 23, 1998).....................................................................................................4, 15

*Moore v. Keegan Mgmt. Co. (In re Keegan Mgmt. Co., Sec. Litig.)*, 78 F.3d 431, 435 (9th Cir. 1996) ................................................................4, 14

*Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 837 (7th Cir. 2005) .............4, 15, 17

*Rodriguez v. United States*, 542 F.3d 704, 709 (9th Cir. 2008) .............................17

**Statutes**

28 U.S.C. § 1927 ...........................................................................................16

**Federal Rules of Civil Procedure**

Fed. R. Civ. Proc. 13 .......................................................................................4

Fed. R. Civ. Proc. 14 .......................................................................................4

## STATEMENT OF JURISDICTION

This action arises under 28 U.S.C. § 1331, the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* ("Copyright Act"), 28 U.S.C. § 1332, and 28 U.S.C. § 1367. *See* Excerpt of Record ("ER") 26-27, 64.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because this appeal is taken from a final decision of the district court denying a post-judgment motion for sanctions[1]. The order that is subject to this appeal was entered on December 20, 2022. ER-7-25. Pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A), a Notice of Appeal was timely filed on January 18, 2023. ER-1-5.

---

[1] The December 20, 2022 order denying the motion for sanctions also included and order granting Appellee's motion for attorneys' fees and granting in part Appellee's motion for a cost bond. Those portions of the December 20, 2022 are not part of the instant appeal.

1

## PERTINENT RULES AND STATUTES

Pertinent rules and statutes are reproduced in the addendum attached hereto.

## ISSUES PRESENTED

1. Whether the filing of a counterclaim constitutes a multiplication of the proceedings for purposes of assessing liability under 28 U.S.C. § 1927.

2. Whether the District Court's action in "quickly resolv[ing]" the vexatious counterclaims by dismissing them "less than six months after 4Internet submitted its amended filing" is adequate grounds to find that the proceedings were not unreasonably multiplied.

## SUMMARY OF THE ARGUMENT

The Ninth Circuit has previously held that because § 1927 "authorizes sanctions only for the 'multipli[cation of] proceedings,' it applies only to unnecessary filings and tactics once a lawsuit has begun" and "§ 1927 cannot be applied to an initial pleading." *Moore v. Keegan Mgmt. Co. (In re Keegan Mgmt. Co., Sec. Litig.*), 78 F.3d 431, 435 (9th Cir. 1996) (discussing sanctions imposed for the reckless filing of a complaint).

However, the Ninth Circuit has not precluded the application of § 1927 to counterclaims that unreasonably and vexatiously multiply the pleadings. *See Mirch v. Frank*, 266 Fed. Appx. 586, 588 (9th Cir. 2008) ("a third-party complaint"—also characterized by the Local Rules as a "claim-initiating document"—"is not an initial pleading because it cannot arise absent an underlying case"; vexatious third-party complaint in that action "multiplied the proceedings by precipitating the motion to dismiss and [withdrawal of the defendant's counsel]"); *Mont-Bell Co. Ltd v. Mountain Hardwear, Inc.*, 1998 WL 101741, at *1 (N.D. Cal. Feb. 23, 1998) (imposing § 1927 sanctions for a litany of conduct "indicat[ing] a reckless disregard of [the attorney's] duty to this Court," including "filing and unreasonably pursuing certain defenses and counterclaims"); *see also Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 837 (7th Cir. 2005) (district court abused discretion in not imposing § 1927 sanctions for the filing of a frivolous counterclaim that acted to "complicate this already far too complicated and absurdly protracted litigation to the cost of" plaintiff and its counsel) (internal quotation marks and citation omitted).

This is because counterclaims and third-party complaints are not initial pleadings as they cannot arise absent an underlying case that has already been initiated. *See* Fed. R. Civ. Proc. 13, 14(a), (b). Here, the Counterclaims at issue did not initiate this litigation and sanctions are not being sought upon case initiating filings, but on the Counterclaims asserted after the case was already underway.

Indeed, this case is a prime example of why § 1927 should be applied to counterclaims and third-party complaints. Rather than asserting counterclaims against the sole Plaintiff, Robert Miller ("Miller"), Appellee 4Internet, LLC ("4Internet") elected to employ a scorched earth litigation strategy by asserting claims against Miller's counsel[2], Appellants Mathew K. Higbee and Higbee & Associates (collectively "H&A").

Despite claiming to have a meritorious legal theory, a significant portion of 4Internet's counterclaims and subsequent filings were devoted to irrelevant *ad hominem* attacks against H&A in a thinly veiled attempt to use the judicial process harass and embarrass H&A and create a potential conflict of interest between H&A and its client, Miller.

4Internet's filings took 16 months and multiple rounds of motion practice to resolve with the District Court itself opining that 4Internet's "conduct and statements may have stretched the bounds of zealous advocacy" rendering the issue of bad faith "a close question."

Thus, the District Court erred by declining to apply § 1927 to the original Counterclaims asserted by 4Internet against H&A.

When addressing whether § 1927 ought to be applied to 4Internet's Amended Counterclaim, the District Court held that while the statute could apply to amended pleadings, it was not suitable to apply in this case solely because the District Court "quickly resolved" the Amended Counterclaim.

This reasoning was error.

Whether or not a court issues a quick decision does not render a party's conduct or filing any less vexatious or multiplicitous under § 1927. Had the District

---

[2] 4Internet also filed a counterclaim against one of Miller's professional colleagues that was not previously a party to the litigation.

Court ruled on H&A's motions immediately or many months after filing as was the case here, the amount of time and resources that H&A was forced to expend to combat 4Internet's bad faith filings would have been unchanged.

Courts can and should act quickly to address frivolous conduct that arises during the course of litigation. A holding that a court's swift action would excuse an attorney's bad faith conduct would not only incentivize dilatory attorney conduct in courts where dockets are light and decisions are issued speedily, but would also disincentivize courts from acting too quickly to control such conduct lest such haste form the basis for a successful challenge.

Thus, the District Court erred in declining to apply § 1927 based solely on its quick resolution of 4Internet's Counterclaims. The District Court should therefore be reversed, and this matter remanded for further proceedings.

## STATEMENT OF THE CASE

### I.    INTRODUCTION

#### A.    4Internet Responds To A Simple Copyright Infringement Lawsuit By Suing Its Adversary's Attorney For Computer Fraud.

In 2018, Robert Miller ("Miller") filed a simple case against Appellee 4Internet, LLC ("4Internet") asserting a single claim of copyright infringement arising out of a use of one of his photographs on the websites www.4jewish.com and www.4rightwing.com. ER-26-55. Rather than mount a good faith defense against Miller's straight forward copyright claim, 4Internet elected to employ a "scorched earth" litigation strategy asserting Counterclaims against Miller[3], his counsel, Appellants Mathew K. Higbee and Higbee & Associates (collectively "H&A"), and Miller's colleague Christopher Sadowski for allegedly violating the Computer Fraud and Abuse Act ("CFAA") and Georgia Computer Systems Protection Act ("GCSPA"). *See* ER-56-71.

As relevant here, 4Internet alleged that H&A used a third-party service called "Copypants" to search its website to find infringements at the direction of H&A and that this spike in traffic caused its server to crash and violated the CFAA and GCSPA. ER-67-68.

Despite limiting its Counterclaims against H&A to allegedly crashing 4Internet's server, 4Internet's pleading contained numerous libelous accusations levied against H&A that were irrelevant to the Counterclaims. For example, 4Internet alleged that H&A had "conspired" with Miller and Sadowski to "engage[] in []unlawful acts" for the purpose of "manufacturing the instant action" (ER-63); that

---

[3] Although Miller was named as a counterclaim defendant and numerous allegations were made against him in the pleading, none of the causes of action raised by 4Internet appear to have been asserted against Miller in the original Counterclaim.

H&A "have staff who use consumer debt collection tactics to call and harass potential defendants for the purpose of extorting money from parties who may or may not have infringed on a photograph" (ER-65); that "H&A have filed 99 copyright lawsuits in the past three years with 13 filed on behalf of Sadowski and 3 filed on behalf of Miller" (ER-66); that H&A's "business model involves getting settlements from defendants in amounts that are not worth defending and obtaining default judgments against parties who do not respond" (ER-66); that H&A is a "copyright troll" (ER-66); and that H&A engages in "legalized extortion" (ER-66).

These allegations served no purpose to 4Internet's CFAA and GCSPA claims.

On May 7, 2019, H&A filed a Motion to Dismiss 4Internet's Counterclaims. As part of its Motion, H&A provided sworn testimony stating that it had ceased using Copypants prior to the creation of Miller's photograph, and that Copypants had been out of business prior to the discovery of 4Internet's infringement. ER-120-125. H&A provided further sworn testimony that Eugene Sadowski[4], and not Copypants, had actually discovered Miller's photograph on the 4Internet website via a manual image search. ER-113-119.

On June 7, 2019, 4Internet filed an Opposition. In its Opposition, 4Internet speculated for the first time that a company called ImageDefenders, which was co-owned by Mathew Higbee, could have possibly caused the alleged outage rather than Copypants. ER-136. 4Internet further postulated that "reverse image search is being used to generate enough copyright claims for H&A to generate over $100,000 PER DAY." ER-137 (emphasis in original). 4Internet further opined that Miller, Christopher Sadowski and H&A "use the courts as their personal ATM, generating

---

[4] Eugene Sadowski is the uncle to Christopher Sadowski who is the collogue of Miller that 4Internet also sued in its Counterclaim.

astonishing revenues based on what are almost certainly frivolous claims." ER-137-138.

On January 8, 2020, the Court dismissed the counterclaims asserted against H&A. In its Order, the Court noted that the binding Ninth Circuit case *hiQ Labs, Inc. v. LinkedIn Corporation*, 938 F.3d 985, 999 (9th Cir. 2019) has interpreted the phrase "without authorization" in the CFAA to prohibit conduct that is analogous to "'breaking and entering'" and has applied it to only "information [that is] delineated as private through use of a permission requirement of some sort." Dkt. #39, p. 12. The Court ultimately concluded that 4Internet has not plausibly shown that its alleged harm was caused by H&A's alleged conduct but granted leave to amend in case the deficiency could be corrected. Dkt. #39, p. 12.

**B. Despite Dismissal 4Internet Doubles Down By Adding An Additional Claim Against H&A For Conspiracy.**

On January 19, 2020, 4Internet filed an Amended Counterclaim again asserting that H&A had violated the CFAA and GCSPA and also asserting a third claim against H&A for conspiracy. ER-179-225. In its Amended Counterclaim, 4Internet doubled down many of its most heavy accusations accusing H&A of "conspire[ing] … to engage in [] unlawful acts … for the purposes of manufacturing the instant action" (ER-180); alleged that after its relationship with Copypants had ended, H&A continued to use the Copypants software and "changed or obscured its user agent, acquired the Copypants software, or developed similar software" (ER-183, 186); alleged that the Copypants software could be "used nefariously … to post links to images in [sic] a website without the website owner's knowledge or permission" which is conceded was not at issue in this case (ER-183); implied that Mathew Higbee perjured himself in his declaration (ER-188); alleged that "H&A have filed 99 copyright lawsuits in the past three years with 13 filed on behalf of Sadowski and 3 filed on behalf of Miller" (ER-191); and alleged that H&A's "business model involves

getting settlements from defendants in amounts that are not worth defending and obtaining default judgments against parties who do not respond" (ER-191).

Remarkably, despite its accusations, 4Internet also admitted in its pleading that it received a query from an IP address in New Jersey, the same day that Eugene Sadowski, a New Jersey resident, claimed to have performed his manual image search and discovered Miller's photograph. ER-113-115, 191-192.

###   C.   4Internet Continues Its Barrage Of Personal Attacks.

On February 9, 2020, H&A filed a motion to dismiss the Amended Counterclaims. On February 21, 2020, 4Internet filed its Opposition. Predictably, 4Internet continued its barrage of unfounded attacks on H&A which included accusing H&A of making "several material misrepresentations to this Court" (ER-254); stating that "[g]iven the trollish behavior of these Counterclaim Defendants, it is more likely they are just looking for any display of seeded photographs without regard to copyrightability or infringement" (ER-259); asserting that the previously filed declaration of Mathew Higbee was "word-smithed" to give a false impression to the Court (ER-263); claiming that H&A "victim blame[d] 4Internet" and acted with "deliberate indifference" as to H&A's actions (ER-263); and belittling the educational qualifications of H&A employee Jason Dora who submitted a declaration (ER-266).

On July 10, 2020, nearly a year and a half after 4Internet first filed its Counterclaim, the Court dismissed the Counterclaims against H&A with prejudice. ER-281-296. The Court noted that the allegations in 4Internet's Amended Counterclaim were "not clear" and that 4Internet only identified one visit to its website that occurred after it allegedly notified H&A, and that "4Internet does not actually allege that this visit caused its server to malfunction" but instead relied upon a "blurry screenshot." ER-284.

The Court also noted that 4Internet's pleading had not overcome the binding authority outlined by Ninth Circuit in *hiQ Labs, Inc.* Dkt. #47, pp. 6-8. The Court

specifically noted that "4Internet's counterclaim amounts not to breaking and entering, but to a violation of its website's terms of use, which the Ninth Circuit has *repeatedly* stated "cannot [alone] establish liability under the CFAA." ER-288 (emphasis added). The Court also noted that 4Internet's letter to H&A failed to satisfy any element of the test used to show that access to its site was revoked. ER-288. The Court subsequently dismissed the counterclaims against H&A with prejudice.

### D. The District Court Acknowledges 4Internet Likely Acted In Bad Faith But Denies H&A's Request for §1927 Sanctions.

On July 5, 2022, the District Court entered a final judgment. ER-297. On July 19, 2022, H&A moved[5] for sanctions against 4Internet's counsel Ryan Isenberg and Troy Issacson pursuant to 28 U.S.C. §1927 on the grounds that the filing of the Counterclaims and Amended Counterclaims against H&A unreasonably and vexatiously multiplied the proceedings. *See* ER-312.

On December 20, 2022, the District Court issued an omnibus ruling denying H&A's request. In its ruling, the District Court acknowledged that 4Internet's Counterclaims and Amended Counterclaims asserted against H&A had likely been made in bad faith. The District Court concluded that "the amended counterclaims contained some factual inconsistencies;" that "dismissing [the counterclaims] involved a relatively straightforward application of Ninth Circuit and Georgia law;" and that while "4Internet's counsel points to some evidence to support a good-faith belief in bringing the counterclaims, some of their conduct and statements may have stretched he bounds of zealous advocacy" rendering whether 4Internet's conduct constates bad faith "a close question." ER-23.

---

[5] Neither 4Internet nor the District Court challenged the timing of H&A's Motion. Thus, should 4Internet attempt to raise such an argument now, it is deemed to be waived. *United States v. Peterson*, 995 F.3d 1061, 1068 (9th Cir. 2021).

Nevertheless, the District Court stated two independent reasons for denying H&A's Motion.

First, as applied to the original Counterclaims, the District Court determined that because an initial counterclaim constituted an "initial pleading," § 1927 sanctions were not available. ER-21-22. The District Court acknowledged that no binding circuit precedent existed on the question, but based on a slew of district court and non-binding 9th Circuit decisions "predict[ed] that, consistent with its practices as to complaints, the Ninth Circuit would allow § 1927 sanctions for amended, but not initial counterclaims." ER-22.

Second, the District Court concluded that § 1927 sanctions were available as to the Amended Counterclaim. However, the District Court concluded that "[b]ecause the court quickly dismissed the amended counterclaims, those claims did not multiply the proceedings." ER-23.

On January 18, 2023, H&A timely filed a notice of appeal. ER 1-2.

**STANDARD OF REVIEW**

Decisions rendered pursuant to 28 U.S.C. § 1927 sanctions awards are reviewed for an abuse of discretion. *Kaass Law v. Wells Fargo Bank, Nat'l Ass'n*, 799 F.3d 1290, 1292 (9th Cir. 2015). The construction or interpretation of 28 U.S.C. § 1927 is a question of law, and is reviewed *de novo*. *Ibid.*

## ARGUMENT

### I. THE DISTRICT COURT ERRED BY FAILING TO APPLY § 1927 TO 4INTERNET'S ORIGINAL CLAIMS AGAINST H&A

#### A. Counterclaims And Third-Party Claims Are Not Initial Pleadings.

The District Court erroneously concluded that 4Internet's original filings were "initial pleadings" which are not subject to § 1927. In its decision, the District Court acknowledged that the question of whether a counterclaim or third-party claim in subject to § 1927 has not been squarely decided by binding 9th Circuit precedent. ER-21-22. Nevertheless, the District Court "predict[ed] that, consistent with its practices as to complaints, the Ninth Circuit would allow § 1927 sanctions for amended, but not initial counterclaims." ER-22.

As an initial matter, the District Court never clearly determined whether 4Internet's claims against H&A were properly stylized as "counterclaims" governed by Rule 13 or a "third-party claim" governed by Rule 14. H&A would posit that claims asserted under either Rule 13 or Rule 14 would still be subject to § 1927 as explained below. However, to the extent that a material distinction does exist, H&A would submit that 4Internet's claims against H&A are properly treated as third-party claims governed by Rule 14 since H&A was not a party to the original copyright action brought by Miller. *See In re Adbox, Inc.*, 488 F.3d 836, 840 (9th Cir. 2007) ("A counterclaim under Rule 13 must be against an 'opposing party.'" (quoting Fed. R. Civ. P. 13(a), (b)).

In any event, the District Court's broader definition of "initial pleadings" is misplaced. Although the case law does use the term "initial pleadings" when discussing the application of § 1927, that phrase as used in the case law must be read in the context of the text of § 1927 which only addresses only the multiplication an existing proceeding. *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d at 435 (citing cases). Thus, although case initiating documents are exempt, 9th Circuit case law

expressly holds that § 1927 applies to *any* "unnecessary filings and tactics once a lawsuit has begun." *Ibid.*; *MGIC Indem. Corp. v. Moore*, 952 F.2d 1120, 1122 (9th Cir. 1991) ("Section 1927 provides the mechanism for sanctioning conduct that occurs *after commencing a case*." (emphasis added)); *Matter of Yagman*, 796 F.2d 1165, 1187 (9th Cir.) ("It is only possible to multiply or prolong proceedings *after the complaint is filed*."), *amended*, 803 F.2d 1085 (9th Cir. 1986), *cert. denied*, 484 U.S. 963 (1987) (emphasis added)).

Counterclaims and third-party claims are not "initial pleadings" as that phrase is used in 9th Circuit case law because they cannot arise absent an underlying case that has already been initiated. *See* Fed. R. Civ. Proc. 13, 14(a), (b).

The proceedings in this matter were initiated by Miller when he filed his original Complaint for copyright infringement. ER-26-55, 301. Thus, any subsequent filing by any party could constitute a multiplication of the proceeding previously initiated by Miller. *See Kirschner v. Blixseth*, 2012 U.S. Dist. LEXIS 183275, at *73 (C.D. Cal. Nov. 1, 2012) ("[U]nder Ninth Circuit law, this Court is not precluded from imposing § 1927 sanctions for the vexatious or bad faith filing of a counterclaim."); *Mirch*, 266 Fed. Appx. at 588 ("a third-party complaint … is not an initial pleading because it cannot arise absent an underlying case"; vexatious third-party complaint in that action "multiplied the proceedings by precipitating the motion to dismiss"); *Mont-Bell Co. Ltd*, 1998 WL 101741, at *1 (imposing § 1927 sanctions for a litany of conduct "indicat[ing] a reckless disregard of [the attorney's] duty to this Court," including "filing and unreasonably pursuing certain defenses and counterclaims"); *see also Riddle & Assocs., P.C.,* 414 F.3d at 837 (district court abused discretion in not imposing § 1927 sanctions for the filing of a frivolous counterclaim that acted to "complicate this already far too complicated and absurdly protracted litigation to the cost of" plaintiff and its counsel) (internal quotation marks and citation omitted).

It does not matter that 4Internet's Counterclaims were asserted, in part, against new parties to the litigation or that they involved new claims. The statute itself only concerns "proceedings" and the addition of new parties, new claims, or new filings still functions to multiply an existing proceeding. *See* 28 U.S.C. § 1927.

Additionally, for tactical or procedural reasons parties routinely assert counterclaims and third-party claims that they likely would not have otherwise asserted absent litigation having been initiated against them. *See Matsushita Elec. Indus. Co. v. CMC Magnetics Corp*., 2007 U.S. Dist. LEXIS 7798, at *19 (N.D. Cal. Jan. 12, 2007) ("In short, this is nothing more than a litigation gimmick to invent an artificial counterclaim for tactical advantage.") Indeed, 4Internet would likely never have independently sued H&A for violations of the CFAA and GCSPA had Miller not first sued for copyright infringement. As such, it makes sense that a counterclaim or third-party claim should be subject to § 1927 since the very nature of counterclaims and third-party claims is, in many respects, materially different than the filing of a complaint.

In conclusion, the District Court erred in finding that 4Internet's original Counterclaim qualified as an "initial pleading" that was exempt from § 1927. As such, the District Court should be reversed, and the case remanded.

**B.    It Is Clear That The Counterclaims Against H&A Were Intended To Be Vexatious In Nature.**

Although the District Court seemed to agree that 4Internet's conduct was vexatious, it never expressly made a finding one way or another. *See* ER-23. Nevertheless, the record is clear that the Counterclaims asserted against H&A were reckless and improperly motivated.

A "vexatious" multiplication of the proceedings occurs when the party acts recklessly, plus "something more," such as frivolousness, harassment, or an improper purpose. *Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001) ([R]ecklessness suffices

16

for § 1927); *see B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002) (finding recklessness plus knowledge sufficient for section 1927 sanctions); *Rodriguez v. United States*, 542 F.3d 704, 709 (9th Cir. 2008) ("An award of attorney's fees is justified when reckless conduct is 'combined with an additional factor such as frivolousness, harassment, or an improper purpose.'"). Similarly, the Court may find bad faith under Section 1927 either when subjective bad faith is present or when "an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015).

Courts have previously confronted the issue of a litigant electing to sue his opponent's attorney with some courts imposing a prohibition on lodging a counterclaim against opposing counsel during an ongoing proceeding. *See Badger Cab Co., v. Soule*, 492 N.W.2d 375, 60 (Wis. Ct. App. 1992); *see also Malec Holdings II Ltd. v. English*, 217 Fed. Appx. 527, 530 (7th Cir. 2007) (citing *Badger Cab*) (vacating and remanding District Court decision ordering that the lower court consider Rule 11 Sanctions for filing counterclaims against opposing counsel). The very first danger sought to be avoided by is that "[a]lowing counterclaims against opposing counsel could create a conflict of interest which would require a substitution of counsel." *Badger Cab*, 492 N.W.2d 375 at 760 (citing *Babb v. Superior Court of Sonoma County*, 479 P.2d 379, 382 (Cal. 1971); *Lydon v. Shaw*, 372 N.E.2d 685, 688 (Ill. Ct. App. 1978)). The court in *Badger Cab* warned that counterclaims against opposing counsel "could become potent 'dilatory and harassing devices' which could 'deter poor plaintiffs from asserting bona fide claims' due to the additional risk and expense." *Id.* at 760 (citing *Babb*, 479 P.2d at 382-83). Furthermore, the court expressed serious concern "about the negative effect of these counterclaims on the attorney-client privilege and work product immunity, both critical to effective advocacy." *Ibid; see also Riddle & Assocs., P.C.,* 414 F.3d at 837 ("[W]e find that a

reasonably careful attorney should have known that the counterclaim against Ross & Hardies was without merit. The claim multiplied the proceedings unreasonably and vexatiously.").

Here, the reckless nature of the Counterclaim and Amended Counterclaim is apparent on its face. Rather than simply respond and defend to Miller's straight forward claim of infringement, 4Internet elected to employ a "scorched earth" litigation strategy by suing Miller's counsel for the apparent purpose of trying to appear "aggressive" in a vain attempt to bully H&A and Miller into dropping the case. Indeed, while Miller was nominally named as a counterclaim defendant, the original Counterclaim did not actually assert a cause of action against him, and instead focused primarily on conduct attributed to H&A. ER-63-71. There does not appear to be a good faith reason for 4Internet to respond to Miller's copyright claim by suing his counsel.

In addition to being reckless, 4Internet's claim was also frivolous. In its original Order dismissing the Counterclaims against H&A the Court noted that binding Ninth Circuit case *hiQ Labs, Inc. v. LinkedIn Corporation,* 938 F.3d 985, 999 (9th Cir. 2019) clearly foreclosed 4Internet's CFAA and GCSPA. ER-23, 173-177, The Court did ultimately grant leave to amend, however it was not because the Court believed the claims had merit. Rather, the Court opined that 4Internet's pleadings were unclear and given 4Internet's apparent attempt to clarify its factual allegations in its Opposition, the Court granted leave to amend. ER-175-176 ("4Internet does not allege when its server was crippled, and it is not clear from this record whether that occurred only once or more than once. 4Internet does not allege what steps it took, if any, to protect its fledgling search engine from more than 'minimal internet traffic.' … Nor does it allege facts to show that the counterclaim defendants exclusively or typically used Copypants to search for infringing photographs or were the exclusive or majority users of Copypants's service whenever the server was disabled.").

Even after give the chance to correct the deficiencies, 4Internet's Amended Counterclaim were again summarily dismissed – and it wasn't even a close call. The Court noted that the allegations in 4Internet's Amended Counterclaim were "not clear" and that 4Internet only identified one visit to its website that occurred after it allegedly notified H&A, and that "4Internet does not actually allege that this visit caused its server to malfunction" but instead relied upon a "blurry screenshot." ER-284. Indeed, The Court also noted that 4Internet's letter to H&A failed to satisfy *any* element of the test used to show that access to its site was revoked. ER-288-289.

The Court also noted that 4Internet's pleading had not overcome the binding authority outlined by Ninth Circuit in *hiQ Labs, Inc.* and reaffirmed in subsequent cases. ER-286-288. The Court specifically noted that "4Internet's counterclaim amounts not to breaking and entering, but to a violation of its website's terms of use, which the Ninth Circuit has *repeatedly* stated "cannot [alone] establish liability under the CFAA." ER-288 (emphasis added).

Further demonstrating the frivolous nature of 4Internet's Amended Counterclaim, is the evidence provided by H&A on its original Motion to Dismiss. As part of its Motion, H&A provided sworn testimony stating that it had ceased using Copypants prior to the creation of Miller's photograph, and that Copypants had been out of business prior to the discovery of 4Internet's infringement. ER-120-125. H&A provided further sworn testimony that Eugene Sadowski, and not Copypants, had actually discovered Miller's photograph on the 4Internet website via a manual image search. ER-113-119.

Remarkably, 4Internet admitted in its pleading that it received a query from an IP address in New Jersey the same day that Eugene Sadowski, a New Jersey resident, claimed to have performed his manual image search and discovered Miller's photograph. ER-191-192. Despite acknowledging the clear evidence refuting its theory in its pleadings, 4Internet attempted to side-step these facts by alleging in its

Counterclaim that H&A somehow "changed or obscured its user agent, acquired the Copypants software, or developed similar software." ER-183, 186.

Thus, it is clear that 4Internet's Counterclaim and particularly its Amended Counterclaim asserted knowingly frivolous causes of action against H&A.

Finally, 4Internet's conducts was clearly harassing and improperly motivated. As noted above, 4Internet's Counterclaim, Amended Counterclaim, and Opposition documents contained numerous *ad hominem* attacks levied against H&A that served no purpose in advancing its legal theory.

For example, 4Internet alleged that H&A had "conspired" with Miller and Sadowski to "engage[] in []unlawful acts" for the purpose of "manufacturing the instant action" (ER-63-64; ER-180); that H&A "have staff who use consumer debt collection tactics to call and harass potential defendants for the purpose of extorting money from parties who may or may not have infringed on a photograph" (ER-65); that "H&A have filed 99 copyright lawsuits in the past three years with 13 filed on behalf of Sadowski and 3 filed on behalf of Miller" (ER-66; ER-13); that H&A's "business model involves getting settlements from defendants in amounts that are not worth defending and obtaining default judgments against parties who do not respond" (ER-66; ER-191); that H&A is a "copyright troll[6]" (ER-66); that H&A engages in

---

[6] The term "copyright troll" is not a legal term of art used in the Copyright Act or in any other Congressional statute or Federal rule, and H&A does not properly fit the accepted definition of a "copyright troll."

Courts have generally defined a "copyright troll" as a non-content producing person or entity whose business model exists solely of acquiring third-party intellectually property rights for purposes of asserting claims of dubious merit in order to procure settlements. *See Malibu Media, LLC v. Does*, 950 F. Supp. 2d 779, 780 n.1 (E.D. Pa. 2013) (Defining "copyright troll" as a "a non-producer [of content] who merely has acquired the right to bring lawsuits against alleged infringers, and observing that "[m]any internet blogs commenting on this and related cases ignore the rights of copyright owners to sue for infringement, and inappropriately belittle efforts of copyright owners to seek injunctions and damages."); *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 2014 WL 1724478, at *8 (N.D. Cal. Apr. 29, 2014) (stating that labeling plaintiff as a copyright troll "unhelpful and slightly

"legalized extortion" (ER-66); that H&A continued to use the Copypants software and "changed or obscured its user agent, acquired the Copypants software, or developed similar software" (ER-183, 186); that the Copypants software could be "used nefariously … to post links to images in [sic] a website without the website owner's knowledge or permission" which is conceded was not at issue in this case (ER-183); that Mathew Higbee impliedly perjured himself in his declaration (ER-188); that Miller, Sadowski and H&A "use the courts as their personal ATM, generating astonishing revenues based on what are almost certainly frivolous claims;" (ER-137-138); that H&A of allegedly made "several material misrepresentations to this Court" (ER-254); that "[g]iven the trollish behavior of these Counterclaim Defendants, it is more likely they are just looking for any display of seeded photographs without regard to copyrightability or infringement" (ER-259); that the previously filed declaration of Mathew Higbee was "word-smithed" to give a false impression to the Court (ER-263); that H&A "victim blame[d] 4Internet" and acted with "deliberate indifference" as to H&A's actions (Er-263); and belittling the educational qualifications of H&A employee Jason Dora who submitted a declaration (ER-266).

Aside from their lack of merit, none of these statements had any bearing on 4Internet's theories of liability. Rather, their inclusion in pleadings and briefs was

---

disingenuous" and observing that "it is not the purpose of the Copyright Act to deter litigants from bringing potentially meritorious claims, even though those claims may be ultimately unsuccessful.") (quotation and citation omitted).

4Internet's use of the term "copyright troll" is misplaced if not wholly irrelevant. H&A is a law firm, not a content creator or plaintiff in a copyright lawsuit and thus labeling it a "troll" for simply doing what law firms routinely do, *i.e.* filing and litigating cases in its chosen field of practice, is disingenuous and not germane to any issues in this case. H&A makes no apologies about the fact that it specializes in copyright infringement litigation or that it has successfully handled a wide variety of infringement claims for hundreds of clients. The fact that it has chosen to specialize in copyright infringement litigation, and that it has found success in doing so, does not suggest any improper motivation in bringing this lawsuit, but is merely an indication of its strong reputation as a trusted and zealous advocate for content creators.

wholly gratuitous and demonstrate that 4Internet's primary motivation was to harass and belittle H&A rather than to advance any viable legal theory.

Thus, the record undoubtedly establishes that 4Internet vexatiously multiplied these proceedings through its frivolous and improperly motivated claims asserted against H&A.

In conclusion, it is clear that 4Internet and its counsel vexatiously multiplied the proceedings by the Counterclaims and Amended Counterclaims against H&A. As such, the District Court should be reversed, and the case remanded for further proceedings.

## II. THE DISTRICT COURT ERRED IN FINDING THAT THE SPEED OF ITS RULING EXCUSED 4INTERNET'S CONDUCT

After recognizing that § 1927 could be applied to the Amended Counterclaim, the District Court determined that 4Internet had not multiplied the proceedings because the District Court "quickly resolved" the Amended Counterclaim by dismissing it "less than six months" after it was filed. ER-23-24. In support of its reasoning the District Court cited to the case *Braunstein v. Ariz. DOT*, 683 F.3d 1177 (9th Cir. 2012) and observed that it had dismissed the Amended Counterclaims in less time than the district court did in *Braunstein*. ER-24.

Here, the District Court's reliance on *Braunstein* was misplaced as that case does not stand for the proposition that a court's speed in adjudicating a matter can serve as the sole justification for a finding that otherwise vexatious conduct was not multiplicitous.

In *Braunstein,* the district court held that attorneys had unnecessarily multiplied the proceedings by including claims that the court considered to be "groundless." *Braunstein*, 683 F.3d at 1189. However, the 9th Circuit reversed stating that the district court had had erred when it concluded the claim was "groundless". *Ibid*. In a two passing sentence of dicta the *Braunstein* court observed that "the

district court quickly and correctly dismissed the claims barred by sovereign immunity at the outset of the litigation, so those claims did not vexatiously multiply the proceedings" and "Defendants conceded at oral argument that Braunstein's attorneys did not file repetitive motions or generate an extraordinary volume of paperwork in this case." *Ibid.*

Contrary to the District Court's reasoning here, *Braunstein* does not stand for the proposition that the speed of a court's decision of the volume of paperwork generated can be used as the sole gauge for whether § 1927 sanctions are appropriate. Rather, the reversal in *Braunstein* is premised on the court's finding that the district court erred in its determination that the claims asserted was "groundless." Since § 1927 only applies to multiplication of proceeding occurring as a direct result of vexatious or frivolous conduct, the fact that the *Braunstein* court determined that the conduct at issue was not vexatious or frivolous acted to defeat the § 1927 claim in that case, regardless of how quickly the underlying district court issued its decision or the relative complexity of the issue litigated.

In contrast to *Braunstein*, the District Court in this case expressly concluded that "the amended counterclaims contained some factual inconsistencies;" that "dismissing [the counterclaims] involved a relatively straightforward application of Ninth Circuit and Georgia law;" and that while "4Internet's counsel points to some evidence to support a good-faith belief in bringing the counterclaims, some of their conduct and statements may have stretched he bounds of zealous advocacy" rendering whether 4Internet's conduct constates bad faith "a close question." ER-23.

Whether or not a court issues a quick decision does not render a party's conduct or filing any less vexatious or multiplicitous under § 1927. Had the District Court ruled on H&A's motions immediately or many months after filing as was the case here, the amount of time and resources that H&A was forced to expend to

combat 4Internet's bad faith filings would have been unchanged. A holding that a court's swift action would excuse an attorney's bad faith conduct would not only incentivize dilatory attorney conduct in courts where dockets are light and decisions are issued speedily, but would also disincentivize courts from acting too quickly to control such conduct lest such haste form the basis for a successful challenge.

Furthermore, the District Court's observation that the briefing was not "repetitive or voluminous" is also insufficient to conclude that the proceedings were not multiplied. The merely complexity of a legal issue should not dictate whether a filing multiplied the proceedings or was made for a vexatious or frivolous purpose. Indeed, many acts are deemed to be vexatious simply *because* of how straightforwardly frivolous they are.

This case provides an example of why the District Court's reliance on speed of adjudication or size of brief should not be determinative factors under § 1927. Assuming *arguendo* that the Counterclaims were adjudicated swiftly and did not cause repetitive or voluminous briefing, this is not a case of an existing party having to fight off a counterclaim. Rather, H&A should never have been a party to the case in the first place. Thus, the multiplication stems not just from the how quickly or simply the legal issue could have been resolved, rather, the multiplication involved forcing parties wholly unrelated to the merits of the dispute having to expend time and resources to remove themselves from a case in which they should have never been a party in the first place.

In the end, sanctions under § 1927 should not turn solely on whether a district court can quickly adjudicate and issue or whether the issue itself was overly complex. Rather, the analysis should turn on whether the litigants themselves had to unfairly bear the burden of vexatiously multiplied proceedings.

As such, the District Court should be reversed, and the case remanded for further proceedings.

24

## III.   CONCLUSION

For the foregoing reasons, the judgment of the District Court should be reversed, and the case remanded further proceedings.


Dated: April 21, 2023                           Respectfully submitted,

                                                **/s/ Ryan E. Carreon**
                                                Ryan E. Carreon, Esq.
                                                Cal. Bar No. 311668
                                                **HIGBEE & ASSOCIATES**
                                                1504 Brookhollow Dr., Ste 112
                                                Santa Ana, CA 92705-5418
                                                (714) 617-8336
                                                (714) 597-6559 facsimile

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6(b), Appellant Robert Miller states its belief that the pending case *Robert Miller v. 4Internet, LLC,* case 22-16195 is related.

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,316 words and 768 lines, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

Dated: April 21, 2023                    Respectfully submitted,

**/s/ Ryan E. Carreon**
Ryan E. Carreon, Esq.
Cal. Bar No. 311668
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(714) 617-8336
(714) 597-6559 facsimile

**ADDENDUM**

**<u>Table of Contents</u>**

28 U.S.C. § 1927………………………………………………………A-1

## 28 U.S. CODE § 1927 - COUNSEL'S LIABILITY FOR EXCESSIVE COSTS

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: April 21, 2023                    Respectfully submitted,

**/s/ Ryan E. Carreon**
Ryan E. Carreon, Esq.
Cal. Bar No. 311668
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(714) 617-8336
(714) 597-6559 facsimile