No. 23-15102

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MATHEW K. HIGBEE & THE LAW FIRM OF HIGBEE &
ASSOCIATES, APC

*Counterclaim Defendants- Appellant,*

v.

4INTERNET, LLC,

*Counterclaim Plaintiff- Appellee.*

Appeal from the United States District Court
For the District of Nevada
Case No. 2:18-cv-02097
Hon. Jennifer A. Dorsey

**ANSWERING BRIEF**

Ryan L. Isenberg
Isenberg & Hewitt, P.C.
600 Embassy Row, Suite 150
Atlanta, GA 30328
770-351-4400 (Voice)
770-828-0100 (Fax)
ryan@ihlaw.us

*Attorney for Defendant - Appellee*
4INTERNET, LLC

# Corporate Disclosure Statement

Pursuant to Federal Rule of Appellate Procedure 26.1, **4INTERNET, LLC** makes the following disclosures:

1. For non-governmental corporate parties please list all parent corporations:

*None.*

2. For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

*None.*

3. If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

*None.*

Dated: June 20, 2023        By: /s/ Ryan Isenberg

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ............................................i

TABLE OF CONTENTS ...............................................................ii

TABLE OF AUTHORITIES ........................................................ iii

APPELLEE'S BRIEF .................................................................. 1

    INTRODUCTION ................................................................. 1

    ISSUE PRESENTED ............................................................ 3

    STATEMENT OF THE CASE ............................................... 3

      I.  Facts.................................................................... 3

        A.  4Internet's Counterclaim was Made in Good Faith ................. 3

      II.  Procedural History ................................................ 6

      III.  Summary of the Argument .................................... 6

    Standard of Review ........................................................... 8

    Argument ........................................................................ 9

      I.  28 U.S.C. § 1927 Does Not Apply to Initial Counterclaims ........ 9

      II.  The District Court didn't even find subjective bad faith as to the amended counterclaim.................................... 12

        A.  Facts Relating to the Counterclaim, Motion to Dismiss, Amended Counterclaim and Second Motion to Dismiss ............................................................. 12

        B.  The District Court's Finding .................................... 16

      III.  Prologue: Recent Developments in this Case and Others.......... 18

      IV.  Appellants' Business Model was Relevant................................. 20

    Conclusion ...................................................................... 23

FORM 17. STATEMENT OF RELATED CASES PURSUANT TO CIRCUIT RULE 28-2.6 ....................................................... 25

FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS ................ 26

CERTIFICATE OF SERVICE .............................................................. 28

# TABLE OF AUTHORITIES

Page

**Cases:**

*Advocs. for Individuals With Disabilities LLC v. MidFirst Bank*
  279 F. Supp.3d 891 (D. Ariz. 2017) .................................................. 21

*Air Separation, Inc. v. Underwriters at Lloyd's of London*
  45 F.3d 288 (9th Cir. 1995) .............................................................. 16

*Barber v. Miller*
  146 F.3d 707 (9th Cir. 1998) ............................................................ 16

*Barke v. Banks*
  25 F.4th 714 (9th Cir. 2022) ............................................................. 12

*Bigelow v. RKO Radio Pictures*
  16 F.R.D. 15 (N.D. Ill. 1954) ........................................................... 10

*Braunstein v. Arizona Dep't of Transp.*
  683 F.3d 1177 (9th Cir. 2012) .......................................................... 17

*Chambers v. NASCO, Inc.*
  501 U.S. 32 (1991) ........................................................................... 16

*Commonwealth Sch., Inc. v. Commonwealth Acad. Holdings LLC*
  994 F.3d 77 (1st Cir. 2021) .............................................................. 10

*De Dios v. Int'l Realty & Invs.*
  641 F.3d 1071 (9th Cir. 2011) .......................................................... 11

*Facebook, Inc. v. Power Ventures, Inc.*
  844 F.3d 1058 (9th Cir. 2016) ..................................................... 7, 14

*Fink v. Gomez*
  239 F.3d 989 (9th Cir. 2001) ............................................................ 16

*Fogerty v. Fantasy, Inc.*
  510 U.S. 517 (1994) ......................................................................... 23

*Glasser v. Blixseth*
  649 F.App'x 506 (9th Cir. 2016) ...................................................... 11

*Gonzalez v. Allied Collection Servs., Inc.*
  852 F. App'x 264 (9th Cir. 2021) ....................................................... 9

*Google LLC v. Oracle Am., Inc.*
141 S.Ct. 1183 (2021) ........................................................................ 23

*Gust, Inc., v. Alphacap Ventures, LLC*
905 F.3d 1321 (Fed. Cir. 2018) ........................................................ 12

*Harris v. Steinem*
571 F.2d 119 (2d Cir. 1978) .............................................................. 10

*HiQ Labs, Inc. v. LinkedIn Corp.*
938 F.3d 985 (9th Cir. 2019) ................................................... 2, 5, 14

*Hubbard v. Plaza Bonita, LP*
630 F.App'x 681 (9th Cir. 2015) ....................................................... 16

*In re Keegan Mgmt. Co.*
78 F.3d 431 (9th Cir. 1996) ....................................................... 11, 16

*In re TCI Ltd.*
769 F.2d 441 (7th Cir. 1985) ............................................................ 11

*Jensen v. Phillips Screw Co.*
546 F.3d 59 (1st Cir. 2008) .............................................................. 12

*Keck v. Mix Creative Learning Ctr., LLC*
No. 4:21-CV-00430
2023 WL 2652259 (S.D. Tex. Mar. 27, 2023) .................................. 20

*League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*
558 F.2d 914 (9th Cir. 1977) ........................................................... 11

*Macort v. Prem, Inc.*
208 F.App'x 781 (11th Cir. 2006) .................................................... 12

*MGIC Indem. Corp. v. Moore*
952 F.2d 1120 (9th Cir. 1991) ......................................................... 16

*Michael Grecco Prods., Inc. v. 8 Decimal Cap. Mgmt., LLC*
No. 20CV07466HSGTSH
2021 WL 2534567 (N.D. Cal. June 1, 2021) ................................... 22

*Miller v. Netventure24 LLC*
No. 19 CIV. 7172 (LGS)
2021 WL 3931928 (S.D.N.Y. Sept. 2, 2021) ................................... 22

*Miller v. Netventure24 LLC*
No. 19CV7172LGSBCM
2021 WL 3934262 (S.D.N.Y. Aug. 6, 2021) .................................... 22

*Mirch v. Frank*
266 F.App'x 586 (9th Cir. 2008) ........................................................ 12

*Mockingbird Found., Inc. v. Quang-Tuan Luong*
No. 19-CV-05671-RS
2020 WL 858099 (N.D. Cal. Feb. 20, 2020) ................................. 9, 22

*Morton's of Chicago/Miami, LLC v. 1200 Castle 100-A, Inc.*
No. 13–23366-CIV
2014 WL 11944281 (S.D. Fla. Aug. 22, 2014) .................................. 10

*Nystrom v. TREX Co.*
424 F.3d 1136 (Fed. Cir. 2005) ........................................................ 11

*Peer Int'l Corp. v. Pausa Recs., Inc.*
909 F.2d 1332 (9th Cir. 1990) .......................................................... 23

*Port of Stockton v. W. Bulk Carrier KS*
371 F.3d 1119 (9th Cir. 2004) .......................................................... 10

*Riddle & Assocs., P.C. v. Kelly*
414 F.3d 832 (7th Cir. 2005) ............................................................ 11

*Soules v. Kauaians For Nukolii Campaign Comm.*
849 F.2d 1176 (9th Cir. 1988) ............................................................ 8

*Steinert v. Winn Grp., Inc.*
440 F.3d 1214 (10th Cir. 2006) ........................................................ 12

*United States v. Spangle*
626 F.3d 488 (9th Cir. 2010) .............................................................. 9

*United States v. Van Buren*
940 F.3d 1192 (11th Cir. 2019) ........................................................ 15

*Van Buren v. United States*
141 S.Ct. 1648 (2021) ......................................................................... 6

*Van Buren*
140 S.Ct. 2667 (2020) ....................................................................... 15

*W. Coast Theater Corp. v. City of Portland*
897 F.2d 1519 (9th Cir. 1990) ............................................................ 8

*Wavetronix, LLC v. Myers for DBSI Liquidating Tr.*
704 F.App'x 696 (9th Cir. 2017) ....................................................... 16

*Winterrowd v. Am. Gen. Annuity Ins. Co.*
556 F.3d 815 (9th Cir. 2009) ............................................................ 17

**Statutes:**

17 U.S.C. § 505 ............................................................ 3, 6, 20

18 U.S.C. § 1030 ................................................................ 4

28 U.S.C. § 1927 ............................................ 3, 11, 12, 16, 17

**Court Rules:**

Fed. R. App. P. 38 ........................................................... 17

Fed. R. Civ. P. 7 ............................................................. 10

Fed. R. Civ. P. 12 ....................................................... 12, 21

Fed. R. Civ. P. 13 ........................................................... 10

Fed. R. Civ. P. 19 ........................................................... 10

Fed. R. Civ. P. 20 ........................................................... 10

**Appellee's Brief**

## INTRODUCTION

In 2018 4Internet was operating a very small search engine from a single server. 4Internet's founder, Michael Levy, has extensive expertise in analyzing data available from browsers. Mathew Higbee and his law firm, Higbee & Associates (collectively referred to as "Appellants"), operate an exceptionally high-volume "copyright" practice that operates a lot like a consumer debt collection agency. Through automated and manual means Higbee & Associates would scour the internet looking for targets to send extortionate demand letters to, and if that fails to generate revenue, if they think the target can pay, litigation follows.

Appellants sent a demand to 4Internet on behalf of Robert Miller asserting infringement and offering a resolution that conveniently could be paid with a credit card through the Appellants' portal. After receiving the demand, 4Internet started searching its data and through the use of IP addresses, browser user agents, and referrer strings, figured out that it had been receiving "bot" traffic that was being directed at it by or from Appellants and retrospectively realized that it was this traffic that was causing slowdowns or outages to the server. In response to the demand, having received the information from 4Internet, the undersigned warned Appellants that, in addition to the

1

fact that the image they claimed was infringing was embedded and not actionable, the technology that was being used to scrape or search the 4Internet server was causing harm, that the authorization to visit the site was revoked, and that a counterclaim would be filed if such conduct continued and an action was filed. Undeterred, Appellants rather quickly filed this case on behalf of Plaintiff Robert Miller alleging a single count of copyright infringement after purportedly finding a single picture of a goat on the 4Search sites.

Notwithstanding the warning about the continued use of technology that was causing harm to the 4Internet server, 4Internet determined that Appellants continued to direct the "bot" traffic and as a result a counterclaim was filed asserting that the continued use of image searching technology on the 4Internet server violated the Computer Fraud and Abuse Act and a similar, but not identical, Georgia state law.

Initially, Appellants moved to dismiss the counterclaim, and that motion focused almost entirely on dismissal for lack of standing. The district court granted the motion to dismiss with leave to amend. Though 4Internet disagreed with the district court's analysis, 4Internet went back into its records and amended its counterclaim to include additional specific factual allegations. During the intervening period between the briefing of the first motion and the filing of the amended counterclaim, this Court issued an opinion (*HiQ Labs, Inc. v. LinkedIn*

*Corp.*, 938 F.3d 985 (9th Cir. 2019)) which was relied upon by the district court in its decision to dismiss the amended counterclaims with prejudice and without further leave to amend.

The underlying copyright infringement case was resolved when the district court granted 4Internet's motion for summary judgment. After 4Internet moved for attorney's fees under 17 U.S.C. § 505, Appellants filed their own motion for sanctions under 28 U.S.C. § 1927 and the court's inherent authority. After a meaningful analysis, the district court granted 4Internet's fees and denied Appellants' motion. Appellants only appeal the denial of its motion for sanctions.

## ISSUE PRESENTED

Whether the district court abused its discretion in denying Appellants' Motion for Sanctions.

## STATEMENT OF THE CASE

### I.  Facts

### A.  4Internet's Counterclaim was Made in Good Faith

4Internet received a demand on Thursday, September 20, 2018, in which Higbee & Associates alleged that 4Internet was infringing on Robert Miller's goat picture. SER 0068. On September 25, 2018, not only did 4Internet, through the undersigned counsel, notify Mathew

Higbee that the image at issue was inline linked, but also notified Appellants that "the technology you seem to be using to search the internet for potentially infringing images draws significant system resources, and which is believed to have caused a recent temporary server outage. Since this access exceeds the authorization, your clients should expect a counterclaim under 18 U.S.C. § 1030(a)(5)(c) in the event an action is filed." ER 184.

In response to the simple infringement case filed by Robert Miller, 4Internet indeed asserted a counterclaim alleging that the continued unauthorized use of an automated program called Copypants was causing harm in violation of the Computer Fraud and Abuse Act and the Georgia Computer Systems Protection Act. ER 58–64. 4Internet specifically alleged that the Copypants bot caused 4Internet's server to malfunction by using so many system resources as to knock the server offline. ER 64–65. Though the initial motion to dismiss contains about a page and few lines that recite the standard for granting a motion to dismiss for failure to state a claim, the only argument made in the motion as it relates to this appeal was based on a claim that 4Internet lacked standing. ER 94–103. Nowhere in the motion is 4Internet put on notice as to how the Defendants claimed the complaint was defective in pleading the merits of the case. Despite having raised this issue in its response, the Court granted the order with leave to amend. ER 174.

4Internet alleged even greater detail in the amended counterclaim – this time including allegations about Higbee's relationship with a replacement for Copypants called Image Defender, in which one of the founders was Mathew Higbee. Specifically, 4Internet analyzed the data available to it and alleged that just before a demand was received from Higbee & Associates there would be a spike in bot traffic that caused harm. There were two specific harmful spikes after September 25, 2018, which 4Internet alleged violated CFAA and the Georgia act. ER 175–221. The amended complaint included pages of exhibits showing the data, but, unfortunately without discovery, 4Internet did not have access to Image Defender's records or IP addresses to specifically link it to Higbee & Associates, but the facts plausibly inferred that Appellants were behind whatever technology was causing 4Internet's harm.

Another motion to dismiss was filed as to the amended counterclaims. ER 222–238. Yet again the parties agreed that no discovery would be done pending the resolution of the motion to dismiss. SER 0032–36. This second motion to dismiss, unlike the first, asserted a legal argument that discussed the plausibility of the alleged facts and a relevant law. In the end, the Court granted the motion relying primarily on *HiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d at 1003 because 4Internet failed to allege "the information that Higbee and H&A accessed is the kind for which "authorization" is required and either has been given, has not been given, or has been exceeded." ER

283. As argued in response to the motion that is on appeal, had *Van Buren v. United States*, 141 S.Ct. 1648 (2021) come out the other way, 4Internet would have either asked the district court to revisit the dismissal or would have been able to take the dismissal up on appeal. ER 257. Ultimately, in light of the outcome of *Van Buren*, the district court's decision was correct even if took liberty in its application of the pleading standard.[1]

## II. Procedural History

Miller filed his complaint on October 31, 2018, alleging a single count of infringement. On July 5, 2022, the district court granted summary judgment in favor of 4Internet. On July 11, 2022, 4Internet moved for an award of attorney's fees under 17 U.S.C. § 505. On July 19, 2022, Appellants moved for sanctions. On December 20, 2022, the district court entered an order that granted 4Internet's motion and denied Appellants' motion and entered an amended judgment.

## III. Summary of the Argument

4Internet made specific factual allegations that supported claims under both CFAA and the Georgia statute both in the complaint and the amended complaint. The allegations were akin to having three

---

[1] The district court did not at all address 4Internet's argument that it could have filed an independent John Doe lawsuit to get IP addresses.

people you know and one you don't all throw rocks at your glass house but only one rock breaks one window. The district court's analysis seemed to take plausibility a step too far because 4Internet could not identify which of the four actually threw the rock. 4Internet reasonably articulated why *hiQ* was distinguishable factually and explained that *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067–68 (9th Cir. 2016) permitted the claim because H&A was informed of the harm it was causing and its authorization to visit the site was revoked. The district court, applying *hiQ* disagreed and the Supreme Court's decision in *Van Buren* put the issue to bed.

Appellants' efforts to bootstrap legitimate complaints about the trollish and extortionate nature of their business model into equating that the counterclaim was filed in bad faith are frivolous. The detailed factual allegations were verified in a declaration by Levy. SER 0003–31. The district court considered all of the arguments made by the Appellants and denied the motion for sanctions even without the benefit of evidence now available to 4Internet and this Court. At the time of briefing, 4Internet had limited facts and plenty of suspicion about the enormity of the business operation but little direct evidence other than statements that had been made publicly by Appellants on their website and in interviews, the number of cases filed, and a video posted in 2017 on Youtube in which Appellants had what appeared to be a daily goal of generating over $100,000 in revenue from infringement claims (ER

7

133). Subsequently, 4Internet learned that Higbee had sent out over 500,000 copyright demands and requires all of its clients to sign powers of attorney to allow the firm to completely handle all their cases without interference from those pesky clients. Two clients have publicly come forward and admitted that Higbee is in the business for himself, including the Plaintiff in this case, Robert Miller.

4Internet and its counsel averred and maintain that the counterclaims were asserted in good faith. SER 0122–126. Not only was there good faith in bringing the claims, counsel demonstrated actual good faith in stipulating to stay discovery while both motions were pending to avoid the unnecessary cost of engaging in discovery regarding claims that may not have ended up being necessary. The district court carefully considered the question of bad faith and found, though it was a close question, sanctions were inappropriate. Given the standard of review, the Appellants' appeal is frivolous and the denial of the motion for sanctions should be affirmed.

## Standard of Review

The standard of review as to the denial of the imposition of sanctions is abuse of discretion. *W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1526 (9th Cir. 1990); *Soules v. Kauaians For Nukolii Campaign Comm.*, 849 F.2d 1176, 1185 (9th Cir. 1988). In order to reverse a district court's findings, they must be "illogical, implausible,

or without support in the record." *Gonzalez v. Allied Collection Servs., Inc.*, 852 F.App'x 264, 267 (9th Cir. 2021) quoting *United States v. Spangle*, 626 F.3d 488, 497 (9th Cir. 2010).

## Argument

## I. 28 U.S.C. § 1927 Does Not Apply to Initial Counterclaims

Appellants are high volume filers of copyright lawsuits who admit using automated software to search for and find potential claims for infringement. ER 117, 179 SER 0226; *Mockingbird Found., Inc. v. Quang-Tuan Luong*, No. 19-CV-05671-RS, 2020 WL 858099, at *5 (N.D. Cal. Feb. 20, 2020)). 4Internet had captured data that led it to reasonably believe that Appellants had deployed this software in a way that caused it harm and continued to do so after having been warned about that harm. As a result, 4Internet filed its counterclaims arising from that activity seeking to recover under the Computer Fraud and Abuse Act ("CFAA") and the Georgia Computer Systems Protection Act ("GCSPA").

Appellants were not parties to the case as filed by Robert Miller. Though Appellants appear to be confused about the difference between counterclaims and third-party practice, the claims against Appellants

were counterclaims. Under Rule 13(h) additional parties are added under Rules 19 and 20. Rule 19(a) allows joinder of a party who is subject to service of process without a court order.

Contrary to the arguments raised by Appellants, an answer that contains a counterclaim filed against a new party is unequivocally an initial pleading. Rule 7 defines pleadings. An answer that includes a counterclaim constitutes a party's single initial pleading. *Commonwealth Sch., Inc. v. Commonwealth Acad. Holdings LLC*, 994 F.3d 77, 83 (1st Cir. 2021) (the Academy has not pursued its counterclaims beyond its initial pleading); *Morton's of Chicago/Miami, LLC v. 1200 Castle 100-A, Inc.*, No. 13–23366-CIV, 2014 WL 11944281, at *4 (S.D. Fla. Aug. 22, 2014) (Castle should have raised its Counterclaim in its initial responsive pleading . . .). This Court, in differentiating pleadings from motions indicated that Rule 7(a) defined pleadings including counterclaims." *Port of Stockton v. W. Bulk Carrier KS*, 371 F.3d 1119, 1121 (9th Cir. 2004) (Rule 7 was amended in 2007 but according to the advisory notes those changes were only stylistic.). Rule 13(a)(1) states that "a <u>pleading</u> must state as a counterclaim any claim . . ." See also *Bigelow v. RKO Radio Pictures*, 16 F.R.D. 15, 18 (N.D. Ill. 1954) (A reading of Rule 13 makes it plain that a counterclaim may only be set forth in a 'pleading' by a 'pleader.').

A permissive counterclaim can be brought as a separate action. *Harris v. Steinem*, 571 F.2d 119, 122 (2d Cir. 1978). The purpose of

10

permissive joinder of claims is to "promote trial convenience and to prevent multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*, 558 F.2d 914, 917 (9th Cir. 1977). Here, 4Internet asserted a permissive counterclaim in its answer against the Appellants. That answer and counterclaim is an initial pleading.

In *Glasser v. Blixseth*, 649 F.App'x 506, –07 (9th Cir. 2016), relying on *De Dios v. Int'l Realty & Invs.*, 641 F.3d 1071, 1076 (9th Cir. 2011); *In re Keegan Mgmt. Co.*, 78 F.3d 431, 435 (9th Cir. 1996), the Ninth Circuit, in an unpublished opinion, found that "[t]he district court abused its discretion by ordering sanctions . . . under 28 U.S.C. § 1927 because that section does not allow for the imposition of sanctions based on initial pleadings, such as a counterclaim." In *Nystrom v. TREX Co.*, 424 F.3d 1136, 1150 (Fed. Cir. 2005), the Federal Circuit considered a similar appeal. There, Court of Appeals refused to disturb the denial of a motion for sanctions where "the district court limited its inquiry to whether TREX's filing of the amended counterclaim was a basis for sanctions in this case."

In *Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832 (7th Cir. 2005) the Seventh Circuit affirmed a sanction award under § 1927 for filing a counterclaim, but it also has found that sanctions under § 1927 can apply to all initial pleadings. See *In re TCI Ltd.*, 769 F.2d 441, 448 (7th

Cir. 1985). This seems to be the outlier position.[2] *Jensen v. Phillips Screw Co.*, 546 F.3d 59, 68 (1st Cir. 2008). (To recapitulate, we affirm the district court's ruling as to the inapplicability of 28 U.S.C. § 1927 to the initial pleading herein.); *Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1224–25 (10th Cir. 2006); *Gust, Inc., v. Alphacap Ventures, LLC*, 905 F.3d 1321, 1328 (Fed. Cir. 2018); *Macort v. Prem, Inc.*, 208 F.App'x 781 (11th Cir. 2006).

Appellants' reliance on *Mirch v. Frank*, 266 F.App'x 586 (9th Cir. 2008) is unavailing because *Mirch* was relied upon by the district court in *Glasser* and not even discussed by the appellate panel, and involved a third-party complaint which is not an initial pleading under Rule 7.

## II. The District Court didn't even find subjective bad faith as to the amended counterclaim.

### A. Facts Relating to the Counterclaim, Motion to Dismiss, Amended Counterclaim and Second Motion to Dismiss

The counterclaim was filed with the answer. Appellants moved to dismiss and, regardless of the recitation of the Rule 12(b)(6) standard in the motion, Appellants only argued, as relevant to this appeal, a lack of standing which does not address the merits of the case. *Barke v. Banks*,

---

[2] The analysis is somewhat cloudy because many cases involving § 1927 arise from bankruptcy proceedings that are simply not analogous to civil practice.

25 F.4th 714, 721 (9th Cir. 2022) (dismissals for lack of Article III jurisdiction must be entered without prejudice because a court that lacks jurisdiction "is powerless to reach the merits).

In addition to the allegations in the complaint, 4Internet's founder filed a declaration in opposition to Appellants' motion to dismiss that provided factual statements under oath that supported the counterclaim. SER 0003–0031. Those sworn statements made by Levy demonstrated that:

a. Appellants were using Copypants

b. Copypants was an automated technology that searches the internet looking for photographs

c. Copypants visits could no longer be detected after October 4, 2018

d. Appellant Higbee founded Image Defender which used similar technology to Copypants

The district court's order reached the following conclusion:

The counterclaim defendants argue that these allegations are insufficient to show that 4Internet's injury is fairly traceable to their conduct. Indeed, the facts alleged show that it is merely possible that Higbee and H&A's use of Copypants is what crippled 4Internet's server. Because 4Internet has not plead enough facts to plausibly state that its injury was caused by the conduct of any counterclaim defendant, I dismiss its CSPA counterclaim under Rule 12(b)(1) and Rule 12(b)(6)."

13

ER 173.

In the amended counterclaim, 4Internet alleged specific facts that showed a correlation between bot traffic it had received with visits from Appellants and alleged that that bot traffic had caused harm to 4Internet in terms of server outages and manpower hours spent dealing with those outages. ER 175–221, SER 0003–31. 4Internet provided a graph that was attached to complaint that showed the receipt of tremendous volumes of non-human traffic which is what caused the harm to its server. ER 197–198.

In the motion to dismiss the amended counterclaim, Appellants raised, for the first time, that the claims asserted by 4Internet under the CFAA were subject to dismissal in light of this Court's ruling in *HiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d at 1004 which was decided after the briefing on the first motion but before the order was entered. 4Internet made a good faith effort to distinguish *hiQ* and argued that the facts before the district court were more similar to this Court's decision in *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d at 1067–68. ER 258–259. The district court concluded that *hiQ* precluded the claims under the CFAA and sort of assumed that the same standard applied to the GSCPA claim and dismissed the amended counterclaims.

Appellants filed its motion for sanctions the evening of the last day it was due. ER 313. The motion essentially asserted the argument, which is basically repeated to this Court, that because 4Internet had the

temerity to point out that Appellants have been abusing the court system for their own benefit that this must mean that the counterclaims that were filed were brought in bad faith.

In response to the motion, counsel submitted a declaration documenting a long-time relationship with 4Internet's founder, who is an expert in how the internet works and user data that is available to him. SER 0122–127. Based on his expertise, analysis, and claim of harm, the counterclaims were bona fide and brought in good faith. In addition, counsel's declaration informed the court that in twenty years of practice counsel had never been the subject of a motion for sanctions and stated emphatically that the counterclaims were not brought for an improper purpose.

Finally, as noted above, and as argued to the district court, counsel was aware that the October 2019 Eleventh Circuit decision in *United States v. Van Buren*, 940 F.3d 1192 (11th Cir. 2019) applied the "exceeded authorized access" element of a CFAA claim differently from *hiQ*. The Supreme Court granted certiorari in *Van Buren* while the motion to dismiss the amended counterclaim was still pending. *Van Buren*, 140 S.Ct. 2667 (2020). Ultimately, *Van Buren* was later reversed but had it been affirmed, 4Internet would have had grounds to go back to the district court or this court to consider application of the allegations.

## B.   The District Court's Finding

This Court "must accord the district court's determination whether to impose sanctions [with] deference because the district court is better situated than the court of appeals to marshal the pertinent facts and apply the law." *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 291 (9th Cir. 1995) (citations omitted). "An award of sanctions under 28 U.S.C. § 1927 . . . requires a finding of recklessness or bad faith." *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998) (citing *In re Keegan Mgmt. Co.*, 78 F.3d at 436 and *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). Recklessness is not an issue in this case.[3] In *Barber*, this Court held that "[t]he district court expressly declined to make such findings. The evidence in the record supports the district court's ruling; it certainly shows ignorance or negligence on the part of Carlsen but does not compel a finding that he was reckless or acted in bad faith.[4]" Even when a district court summarily denies a

---

[3]   Recklessness can be present when attorneys mislead the court as to the law or facts. *Fink v. Gomez*, 239 F.3d 989, 993–94 (9th Cir. 2001). Or, in *Hubbard v. Plaza Bonita, LP*, 630 F.App'x 681, 683 (9th Cir. 2015), the Court affirmed an award of sanctions based on recklessness and bad faith where an attorney in engaged in conduct suggesting a party that had died was still alive to consummate a settlement.

[4]   The corollary to this is true as well. In *Wavetronix, LLC v. Myers for DBSI Liquidating Tr.*, 704 F.App'x 696, 699 (9th Cir. 2017) the Court found that the absence of a finding of recklessness plus or bad faith compelled reversal of an award under § 1927. See also *MGIC Indem. Corp. v. Moore*, 952 F.2d 1120, 1122 (9th Cir. 1991) (reversing award of sanctions in the absence of a finding of bad faith).

request for sanctions, that summary denial "necessarily implies that it found no bad faith." *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 826 (9th Cir. 2009).

Here, the district court considered both that "some evidence to support a good-faith belief in bringing the counterclaims" and that "some of their conduct and statements may have stretched the bounds of zealous advocacy" before concluding that "whether 4Internet's conduct constitutes bad faith is a close question." In *Barber*, this Court found that the express refusal to find bad faith was the end of the analysis. *Barber* and *Winterrowd* are controlling here as the district court thought it was a close call but refused to make a finding of bad faith and denied the motion.[5]

Separately, the district court considered *Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177 (9th Cir. 2012) where this Court reversed the imposition of sanctions under § 1927 because "the district court quickly and correctly dismissed the claims barred by sovereign immunity at the outset of the litigation, so those claims did not vexatiously multiply the proceedings and Defendants conceded at oral argument that Braunstein's attorneys did not file repetitive motions or generate an extraordinary volume of paperwork in this case."

---

[5]   *Barber* also makes this appeal frivolous and a motion under Fed. R. App. P. 38 will be forthcoming.

The district court here found that the amended counterclaim had been resolved in six months. During that intervening period, not only, as in *Braunstein*, were there no motions filed,[6] but the parties stipulated to a stay of discovery,[7] so nothing was filed other than the motion to dismiss which was resolved on the merits in light of *hiQ*. The district court weighed the evidence and its finding that there was some evidence on both sides and that it was close call sounds a lot like a plaintiff that fails to meet its burden of proof at the trial of a civil case. This is demonstrative of exactly the sort of discretion that is entitled to deference.

## III.   Prologue: Recent Developments in this Case and Others

There were and are firms well known for their intellectual property practices. For example, Merchant & Gould has been considered an intellectual property litigation boutique for more than a century. For the most part those firms can't exist on their own anymore. Arnold & White was absorbed by Howrey & Simon, Needle & Rosenberg was acquired by Ballard Spahr, and most recently, Durie Tangri, was merged into Morrison Foerster. Appellants vociferously fancy themselves in this vein and as a result the gist of their argument seems

---

[6]   ER 305-306.

[7]   SER 0035-364.

to be that they are a sophisticated copyright litigation practice and the attacks on their business model ipso facto mean that the counterclaims were brought for an improper purpose.

At the time of the filing of the counterclaim and the motions to dismiss counsel had limited publicly available information about Appellants' practice. Unknown to counsel at the time of briefing of the motion for sanctions, and not taken into consideration by the district court, were statements by two former clients of Appellants. Michael Grecco had filed a state court malpractice claim in which he alleged that (a) Higbee once told him that he maintained an active caseload of approximately 500,000 individual matters and that Higbee required all of his clients to sign powers of attorney that grants him the full authority to settle cases without the client's involvement as was the case here with Plaintiff Miller. SER 00226–229, 0233, 0104.

In this case, when asked how many claims had been asserted on his behalf, Robert Miller said he had no idea and to ask Higbee. SER 0193–194. When asked whether Higbee & Associates settled claims on his behalf without his knowledge it was met with a frivolous objection based on attorney-client privilege. SER 0103–0104. When confronted with the hundred-thousand-dollar judgment against him for attorney's fees in this case, Miller filed a pro se motion for reconsideration in which he states, "This case was at all times driven by Mr. Higbee who never explained to me any of the details or risks." Because this was my

19

lawyer's case and not mine . . . SER 0221–223. (first emphasis included in original). A bond was posted in this case. SER 0199.[8] Miller's counsel proposed a settlement offer and threatened bankruptcy. SER 0268. A fair reading of Miller's motion for reconsideration suggests that he did not post the bond and he did not authorize the settlement offer. Rather, it is more likely that Appellants posted bond and made a settlement offer because, as Miller outright says, this was his lawyer's case.

## IV. Appellants' Business Model was Relevant

All of the "attacks" on Appellants' practice, which amount to an allegation that the Appellants are operating a business that uses the court system to generate revenue, are simply true. Even the assertion that Appellants engaged in debt collection like behavior is a fact.[9] But, none of that is why the counterclaim was filed in the first instance.[10] Rather, it was filed because 4Internet's data analysis suggested that

---

[8] Similarly, in *Keck v. Mix Creative Learning Ctr., LLC*, No. 4:21-CV-00430, 2023 WL 2652259 (S.D. Tex. Mar. 27, 2023)) the district court awarded over a hundred thousand dollars in attorney's fees under § 505 and a bond was posted that was almost certainly provided by Higbee. There is no link to deposit in Docket Entry No. 84 but there is a link to the order in Doc. 83.

[9] SER 0143 (referring to an email from Higbee & Associates regarding another Higbee client in which Levy is warned or threatened that "Ignoring this problem will likely result in a dramatic increase in cost and stress.")

[10] Counsel is in the logically impossible situation of being faced with having to prove a negative.

Appellants were deploying a technology that resulted in 4Internet having legitimate complaints that the technology had impacted its server even after Appellants were warned of the harm. The facts that show that Appellants are operating such a high-volume business made it more likely that they would need to deploy and use the technology that was alleged to have caused 4Internet's harm to find more cases. To identify enough potential infringers to send out 500,000 demands and generate $100,000 in <u>daily</u> revenue is difficult to do without technological intervention which Appellants admitted to using and which fact is taken to be true since the counterclaims were dismissed under Rule 12(b)(6). (SER 0226–227; ER 133). Counsel is simply at a loss to understand how it is that the bringing of these counterclaims should just be assumed as vexatious considering that (1) Appellants needed to find a substantial number of targets (2) the 4Internet server had indexed the New York Post and (3) Higbee client Christopher Sadowski was acting as the agent or manager of around ten Post photographers who could were used to bring claims around the country. SER 0075. Where there is smoke there is fire and all of the evidence provided to the undersigned reasonably suggested that Appellants were using a technology that caused 4Internet harm and that is why the counterclaims were asserted.

Courts frequently take issue with attorneys who engage in extortionate practices in connection with their work. See *Advocs. for*

*Individuals With Disabilities LLC v. MidFirst Bank*, 279 F. Supp.3d 891, 893 (D. Ariz. 2017) (describing as extortionate[11] and pervasive the filing of lawsuits that force defendants to pay demands to avoid retaining counsel and paying attorneys). Though not describing Appellants as extortionate, the district court in *Mockingbird Found., Inc. v. Quang-Tuan Luong*, No. 19-CV-05671-RS, 2020 WL 858099, at *5 (N.D. Cal. Feb. 20, 2020), in denying a motion to dismiss a declaratory judgment action, noted that Appellants were "a 'leading filer' of copyright infringement demand letters."

The factual assertions regarding Appellants' business practices were made because they are relevant to various matters in this case. When combined with the admission by Plaintiff Miller that there was no market for his picture, a Court could consider the nature of the Appellants' business model in deciding issues like fair use, statutory

---

[11] Levy described Higbee as engaging in extortion in his Amended Expert opinion. SER 0054. Appellants also make absurd threats in their demand letters that suggesting that a target could be liable for $150,000 in statutory damages. Though that may be the statutory maximum, even when Appellants seek default judgments, they only ask for what they claim to be something like three times the alleged license fee. See *Michael Grecco Prods., Inc. v. 8 Decimal Cap. Mgmt., LLC*, No. 20CV07466HSGTSH, 2021 WL 2534567, at *8 (N.D. Cal. June 1, 2021), report and recommendation adopted, No. 20-CV-07466-HSG, 2021 WL 2531093 (N.D. Cal. June 21, 2021) (seeking double the purported license fee); *Miller v. Netventure24 LLC*, No. 19CV7172LGSBCM, 2021 WL 3934262 (S.D.N.Y. Aug. 6, 2021), report and recommendation adopted, *No. 19 CIV. 7172 (LGS)*, 2021 WL 3931928 (S.D.N.Y. Sept. 2, 2021) (Higbee & Associate counsel representing Miller seeking five times a $1,700 licensing fee)

damages, and attorney's fees. SER 0042. *Google LLC v. Oracle Am., Inc.*, 141 S.Ct. 1183, 1197 (2021) (statutory fair use factors not exhaustive); *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 (1994) (see footnote 19 allowing the consideration of motivation, among other things, in considering an award of fees); *Peer Int'l Corp. v. Pausa Recs., Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (in considering statutory damages the court's discretion and sense of justice are controlling).

4Internet also asserted an as-applied constitutional challenge to the process of registering photographs. This challenge arose from the proliferation of photographs and the ease with which they are produced in modernity. In bringing such a challenge, the Appellants conduct, which at the time of the founding would have been considered either barratry or champerty (or somewhere in between) would have been frowned upon, and it seems likely that the Supreme Court would take Appellants' conduct into the background consideration in determining how to interpret the copyright clause.

## Conclusion

In *Barber, supra* this Court found that when the district court has considered the record and there is evidence in the record that supports the district court's ruling that a refusal to sanction must be affirmed. In

*Winterrowd*, this Court implied a lack of bad faith from the denial of a motion for sanctions. Here, the district court carefully considered the record and found no bad faith. As a result, the denial must be affirmed.

<table>
<tr><td></td><td>Isenberg & Hewitt, P.C.</td></tr>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td>Dated: June 20, 2023</td><td>By: /s/ Ryan Isenberg</td></tr>
<tr><td></td><td>Attorney for Defendant and<br>Appellee 4INTERNET, LLC</td></tr>
</table>

**Form 17.**
**Statement of Related Cases Pursuant to Circuit Rule**
**28-2.6**

---

**9th Cir. Case Number: 23-15102**

The undersigned attorney or self-represented party states the

following:

[ ] I am unaware of any related cases currently pending in
this court.

[ ] I am unaware of any related cases currently pending in
this court other than the case(s) identified in the initial
brief(s) filed by the other party or parties.

[**X**] I am aware of one or more related cases currently
pending in this court. The case number and name of each
related case and its relationship to this case are:

*Miller v. 4Internet, LLC*, Case No. 22-16195

Dated: June 20, 2023            By: /s/ Ryan Isenberg

**Form 8.**
**Certificate of Compliance for Briefs**

---

**9th Cir. Case Number: 23-15102**

I am the attorney. This brief contains **5,357** words, excluding the items exempted by Federal Rules of Appellate Procedure 32(f). The brief's type size and typeface comply with Federal Rules of Appellate Procedure 32(a)(5) and (6). I certify that this brief:

[**X**] complies with the word limit of Cir. R. 32-1.

[ ] is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a death penalty case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because (select only one):

    [ ] it is a joint brief submitted by separately represented parties;

    [ ] a party or parties are filing a single brief in response to multiple briefs; or

    [ ] a party or parties are filing a single brief in response to a longer joint brief.

26

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


Dated: June 20, 2023                    By:  /s/ Ryan Isenberg_____

## Certificate of Service

I hereby certify that I electronically filed the foregoing **ANSWERING BRIEF** with the Clerk of the Court by using the Appellate CM/ECF system on June 20, 2023. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: June 20, 2023                    By: /s/ Ryan Isenberg