No. 23-15102

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MATHEW K. HIGBEE &
THE LAW FIRM OF HIGBEE & ASSOCIATES, APC,
*Counterclaim Defendants - Appellants,*

v.

4INTERNET, LLC,
*Counterclaim Plaintiff - Appellee.*

On Appeal from the United States District Court
for the District of Nevada
Hon. Jennifer A. Dorsey
No. 2:18-cv-02097

## APPELLANTS' REPLY BRIEF

Mathew K. Higbee
Ryan E. Carreon
Naomi M. Sarega
**HIGBEE & ASSOCIATES**
1504 Brookhollow Drive, Suite 112
Santa Ana, California 92705
Tel: 714-617-8336
mhigbee@higbee.law
rcarreon@higbee.law
nsarega@higbee.law

*Attorneys for Counterclaim Defendants - Appellants Mathew K. Higbee
& The Law Firm of Higbee & Associates, APC*

# TABLE OF CONTENTS

I.  APPELLEE CONCEDES THE CLAIMS AGAINST H&A ARE SUBJECT TO SANCTIONS UNDER §1927 ................................................1

   A.  Appellee Concedes That Third-Party Claims Fall Under §1927...............1

II. APPELLEE CLEARLY ACTED WITH SUBJECTIVE BAD FAITH.....3

   A.  Appellee Incorrectly Asserts That The District Court Did Not Find That Appellee Acted In Subjective Bad Faith..................................................3

      1.  The Original Counterclaims Were Asserted In Bad Faith. ...............4

      2.  The Amended Counterclaims Were Asserted In Bad Faith. ...............7

      3.  Appellee Engaged In Independently Sanctionable Conduct.............8

III. THE FACT THAT DISCOVERY WAS STAYED DURING THE THE MOTIONS TO DISMISS IS IRRELEVANT ............................................10

IV. CONCLUSION ........................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Braunstein v. Ariz. DOT*, 683 F.3d 1177 (9th Cir. 2012) ........................................10

*Dahiya v. Kramer* (*In re Khan*), 593 Fed. Appx. 83 (2d Cir. 2015) .........................2

*Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001) ...............................................7

*Glasser v. Blixseth*, 649 Fed. Appx. 506 (9th Cir. 2016) ...........................................2

*hiQ Labs, Inc. v. LinkedIn Corporation,* 938 F.3d 985, 999 (9th Cir. 2019) ........7, 8

*Matter of Yagman*, 796 F.2d 1165, 1187 (9th Cir.) ....................................................3

*Moore v. Keegan Mgmt. Co. (In re Keegan Mgmt. Co., Sec. Litig*.), 78 F.3d 431, 435 (9th Cir. 1996) .......................................................................................................1

*Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 837 (7th Cir. 2005) ..........................3

*United States v. Van Buren*, 940 F.3d 1192, 1196 (11th Cir. 2019) ..........................7

*Van Buren v. United States*, 140 S. Ct. 2667, 206 L. Ed. 2d 822, 2020 U.S. LEXIS 2336 (U.S., Apr. 20, 2020) ..........................................................................................8

**Statutes**

18 U.S.C. § 1030(a)(2)(C) .............................................................................................4

Ga. Code § 16-9-93(b)(3) .............................................................................................4

**Treatises**

1 *Sanc. Fed. Law of Lit. Abuse* § 23 ..........................................................................3

**Federal Rules of Civil Procedure**

Fed. R. Civ. Proc. 13 ..................................................................................................1, 2

# ARGUMENT

## I. APPELLEE CONCEDES THE CLAIMS AGAINST H&A ARE SUBJECT TO SANCTIONS UNDER §1927

### A. Appellee Concedes That Third-Party Claims Fall Under §1927.

Sanctions under § 1927 cannot be levied against counsel for the filing of case initiating documents since there are no existing proceedings to multiply. *See Moore v. Keegan Mgmt. Co. (In re Keegan Mgmt. Co., Sec. Litig.*), 78 F.3d 431, 435 (9th Cir. 1996). In an effort to capitalize on this prohibition, Appellee contends that the original claims asserted against H&A "were initial counterclaims" and thus exempt from sanctions as initial pleadings. Opposition at pp. 9-10. The District Court below embraced this position, referring to the original claims asserted against H&A as "initial counterclaims" and holding that §1927 could not apply. *See* 1-ER-15-16.

However the case that reaffirmed the prohibition against awarding § 1927 sanctions for initial filings[1], *In re Keegan Mgmt. Co., Sec. Litig.*, also observed that §1927 sanctions can apply to any "unnecessary filings and tactics *once a lawsuit has begun.*" *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d at 435 (emphasis added). By definition, a counterclaim can only be levied after a lawsuit has been initiated. *See* Fed. R. Civ. Proc. 13. Thus, while initial *complaints* may be exempt from §1927 because they do not multiply an existing proceeding, initial *counterclaims* can be sanctioned because they cannot be filed absent an existing proceeding.

---

[1] The case law refers to "initial pleadings" when discussing the prohibition against §1927 sanctions. This phrasing seems to have led to the confusion surrounding which filings are exempt from §1927 and which are not. Appellee appears to embrace the position that an "initial" pleading refers to any party's first pleading, regardless of whether that pleading initiates the proceeding itself or is merely the first document filed by a party in a previously initiated proceeding. As discussed below, the Ninth Circuit case law suggests that the term "initial pleading" only refers to case initiating pleadings and not to pleadings filed after a proceeding has already commenced, even if that pleading constitutes a party's first filing in the proceeding.

Even so, Appellee concedes that a "third-party complaint [] is not an initial pleading." Opposition at p. 12. Thus, according to Appellee's own argument, if the claims asserted against H&A are properly categorized as third-party claims rather than initial counterclaims, they would be subject to §1927 sanctions. Assuming *arguendo* that Appellee is correct that initial counterclaims are exempt from § 1927 while third-party claims are not, it is clear that both Appellee and the District Court below improperly categorized the claims against H&A as "counterclaims."

A counterclaim is defined as a claim the pleader has "against an opposing party." Fed. R. Civ. Proc. 13(a)(1); (b) (stating that both compulsory and permission counterclaims are asserted "against an opposing party"). In its Opposition, Appellee concedes that "Appellants were not parties to the case filed by [Plaintiff] Robert Miller." Opposition at p. 9. Indeed, while H&A represented a party, it was in and of itself not a party to the litigation that was originally filed by Miller. Therefore, the filing of the claims against H&A cannot properly be considered "counterclaims" because they were asserted not asserted "against an opposing party" but rather against strangers to the litigation.

Appellee cites to the unpublished decision *Glasser v. Blixseth*, 649 Fed. Appx. 506 (9th Cir. 2016) for the proposition that §1927 sanctions cannot be levied for the filing of counterclaims. However, as a leading treatise explains, *Glasser* was likely incorrectly decided:

> The *Glasser* decision provides excellent reasons why sanctions were inappropriate but the fact that a counterclaim may in some sense be characterized as an "initial pleading" is not a persuasive reason for immunizing counterclaims (or third-party claims) from sanctions under § 1927. The statute applies to any lawyer who "multiplies the proceedings in any case unreasonably and vexatiously." By definition, a counterclaim multiplies the proceedings in a case. If it does so unreasonably and vexatiously, the elements of the statute are satisfied and the responsible lawyer is subject to sanction. Thus, other courts—including in Circuits that hold complaints non-sanctionable under § 1927—have recognized the sanctionability of counterclaims under the statute, albeit without explicitly addressing this issue. *See, e.g., Dahiya v. Kramer* (*In re Khan*), 593 Fed. Appx. 83 (2d Cir. 2015) (unpublished) (affirming bankruptcy and district

2

courts' imposition of § 1927 sanctions for counterclaims that were "not colorable" and were filed in bad faith) (Second Circuit holds complaints not sanctionable []); *Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 837 (7th Cir. 2005) (reversing district court for failing to impose § 1927 sanctions for counterclaim (Seventh Circuit holds that complaints are sanctionable[]).

1 *Sanc. Fed. Law of Lit. Abuse* § 23

Regardless of the technicalities of categorizing the initial claims asserted against H&A as counterclaims or third-party claims, it is clear that the filing of these initial claims multiplied a preexisting proceeding and that the District Court erred in determining they were exempt from §1927 sanctions. If this multiplication was done in an unreasonable and vexatious manner, under Ninth Circuit law Appellee must be sanctioned. *See Matter of Yagman*, 796 F.2d 1165, 1187 (9th Cir.) ("Section 1927 does not apply to initial pleadings, since it addresses only the multiplication of proceedings. It is only possible to multiply or prolong proceedings *after the complaint is filed*."[emphasis added]), *amended*, 803 F.2d 1085 (9th Cir. 1986).

Therefore, the District Court should be reversed, and the case remanded.

## II.  APPELLEE CLEARLY ACTED WITH SUBJECTIVE BAD FAITH

### A.  Appellee Incorrectly Asserts That The District Court Did Not Find That Appellee Acted In Subjective Bad Faith.

Next, Appellee contends that the District Court did not find subjective bad faith as to the Amended Counterclaims filed against H&A. *See* Opposition p. 12. Notably, Appellee does not contest that the initial Counterclaims against H&A were filed in bad faith. The District Court did not absolve Appellee of bad faith conduct as to either the original or Amended Counterclaims. Indeed, the District Court expressly stated that Appellee's "conduct and statements may have stretched he bounds of zealous advocacy" rendering the issue of bad faith "a close question." 1-ER-18. The District Court then proceeded to resolve both the initial Counterclaims and Amended Counterclaims by erroneously finding that they did not multiply the proceedings and thus avoiding the question of bad faith altogether.

3

Appellee contends that he acted in good faith reliance on the expertise of his client and that he was hamstrung by the lack of discovery in being able to determine the specific facts that may have supported the counterclaims against H&A. However, the record clearly shows that Appellee and his client had access to factual information and legal authority that directly refuted the initial Counterclaim. Even after the initial Counterclaim was dismissed, Appellee was undisputedly in possession of additional factual and legal authority yet proceeded to file Amended Counterclaim.

Even if Appellee acted in good faith when presenting the initial and Amended Counterclaims, Appellee also engaged in independently sanctionable conduct unrelated to any good faith reliance on his client's expertise or lack discovery as to the merits by purposefully advancing irrelevant and unfounded attacks against counsel, his client, and his employees that was clearly meant only to harass.

Although the arguments in Appellee's Opposition only address the Amended Counterclaim, as will be shown below, both the original Counterclaim asserted against H&A as well as the Amended Counterclaims could only have been asserted in bad faith.

### 1. The Original Counterclaims Were Asserted In Bad Faith.

Appellee claims that he relied in good faith in his client's Internet expertise when asserting claims against H&A under the CFAA and GCSPA[2]. *See* Opposition at p. 15. Appellee also further contends in conclusory fashion that "recklessness is

---

[2] The CFAA provides a cause of action against anyone who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). Similarly, the GCSPA provides a cause of action against anyone who "who uses a computer or computer network with knowledge that such a use is without authority and with the intention of . . . [a]ltering, damaging, or in any way causing the malfunction of a computer, computer network, or computer program." Ga. Code § 16-9-93(b)(3).

4

not at issue in this case." Opposition at p. 16. On the contrary, Appellee's recklessness is the central issue in this case.

As relevant here, in the initial Counterclaim it was alleged that H&A used a third-party service called Copypants to search its website to find infringements at the direction of H&A, and that this spike in traffic caused its server to crash and violated the CFAA and GCSPA. 2-ER-63-64. Additionally, the initial Counterclaim alleged that H&A was informed on September 25, 2018, that the alleged use of Copypants was causing the server to crash, but that H&A "continued to deploy the Copypants bot even after being told of the harm that was being caused." 2-ER-65.

Even if Appellee relied on his client's technological expertise, the allegations of H&A using Copypants to spike and crash the server could not have been made in good faith. The District Court concluded that the allegations in the initial Counterclaim did not even permit an inference that 4Internet's server was temporarily crippled at all, let alone that any harm was traceable to H&A. 2-ER-172. The fact that the initial counterclaim could not even establish a threshold allegation of harm cause by anyone, let alone by H&A directly, demonstrates that, at the very least, Appellee was reckless in permitting such allegations to be made.

Additionally, as H&A pointed out in its Motion to Dismiss, Copypants publicly announced in 2018 that it would shut down its reverse image search service on September 1, 2018. *See* 2-ER-117-120. Had Appellee done any due diligence about Copypants prior to filing the initial Counterclaims against H&A, he would have realized that it would have been impossible for H&A to have used Copypants to cause the alleged outages after Appellee informed H&A of the issue[3] on the

---

[3] As the District Court determined, the counterclaim's "theory of liability appears to be that the counterclaim defendants ran afoul of the CFAA when they caused Copypants to visit 4Internet's server, i.e., use its search engine, after 4Internet had revoked explicitly their permission to do so

September 25, 2018. Appellee cannot blame an alleged good faith reliance on his client to absolve him of his duty to perform basic due diligence.

In addition to pointing out that Copypants could not have caused the alleged outage, H&A also submitted sworn testimony that a third-party, Eugene Sadowski[4], and not Copypants, had actually discovered Miller's photograph on the 4Internet website via a manual image search from his home in New Jersey. 2-ER-109-115. In a later filing, 4Internet admitted that it received a query from an IP address in New Jersey, the same day that Eugene Sadowski claimed to have performed his manual image search and discovered Miller's photograph. 2-ER-109-111, 187-188.

The fact that Appellee and his client later admitted that they were in possession of information about the discovery of Miller's photograph that expressly refuting the theory of liability against H&A further underscores the reckless and frivolous nature of the initial Counterclaims. Indeed, after this irrefutable evidence was submitted with H&A's Motion to Dismiss, Appellee's opposition brief speculated for the first time that a company called ImageDefenders, which was not mention in the Counterclaim at all, could have possibly caused the alleged outage rather than Copypants. 2-ER-132.

To conclude, when examining the allegation against H&A levied in the initial Counterclaim and comparing it with publicly available information about Copypants ceasing operations as well as information in Appellee and his client's possession demonstrating that the photograph at issue was discovered by third-party Eugene Sadowski and not H&A, it is clear that, at minimum, Appellee acted recklessly in

---

[on September 25, 2018]." 2-ER-140. In other words, the District Court determined that any alleged use of Copypants by H&A prior to September 25, 2018 was irrelevant to the counterclaim.

[4] Eugene Sadowski is the uncle to Christopher Sadowski who is the collogue of Miller that 4Internet also sued in its Counterclaim.

allowing the initial Counterclaims to be asserted against H&A. *See Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001) ([R]ecklessness suffices for § 1927).

Because it is clear that Appellee filed the Counterclaim against H&A in bad faith, the District Court should be reversed, and the case remanded.

### 2. *The Amended Counterclaims Were Asserted In Bad Faith.*

Even if the initial Counterclaim was asserted in good faith, in light of the information provided with H&A's original Motion to Dismiss, it is clear that the Amended Counterclaim was asserted in bad faith.

First, as noted above, in response to the original Counterclaim H&A submitted evidence demonstrating that Copypants was out of business during the relevant time period, and that non-party Eugene Sadowski was responsible for finding the infringement at issue using a Google search from his home in New Jersey. 2-ER-109-111, 117-120, 187-188. Despite being on notice of this evidence, the Amended Counterclaim filed by Appellee continued to allege that H&A utilized Copypants to cause server outages. *See* 2-ER-180. There is simply no good faith basis for Appellee to continue to allow these easily disproved claims to be asserted against H&A.

Second, in addition to the suspect factual allegations, Appellee was also on notice that the legal theories asserted against H&A were frivolous. In its original Order dismissing the Counterclaims against H&A the District Court noted that the binding Ninth Circuit case *hiQ Labs, Inc. v. LinkedIn Corporation,* 938 F.3d 985, 999 (9th Cir. 2019) clearly foreclosed the CFAA and GCSPA asserted against H&A. 1-ER-16; 2-ER-169-173. In Opposition, Appellee claims that even though the *hiQ Labs, Inc.* was directly binding, that he was aware of the non-binding case *United States v. Van Buren*, 940 F.3d 1192, 1196 (11th Cir. 2019) which was decided one month after *hiQ Labs, Inc.* and which apparently interpreted the CFAA differently than *hiQ Labs, Inc.* Opposition at p. 15. Appellee further argues that because the Supreme Court granted certiorari of *Van Buren*, it was possible that the Amended

Counterclaim could have potentially survived if *Van Buren* was affirmed. *Ibid.* Thus, according to Appellee, the filing of Amended Counterclaim could not have been frivolous since he had a good faith belief that the law might have changed to favor his position.

This argument clearly fails. First, the Amended Counterclaim was filed by Appellee on January 19, 2020. *See* 2-ER-175-191. The Supreme Court did not grant certiorari in *Van Buren* until three months later on April 20, 2020. *Van Buren v. United States*, 140 S. Ct. 2667, 206 L. Ed. 2d 822, 2020 U.S. LEXIS 2336 (U.S., Apr. 20, 2020). The grant of certiorari in *Van Buren* occurred two months *after* Appellee filed its response to H&A's Motion to Dismiss the Amended Counterclaim on February 21, 2020. *See* 2-ER-248-267.

Thus, contrary to Appellee's implication that the Supreme Court's consideration of *Van Buren* suggests that his legal theory was asserted in good faith, at the time Appellee filed the Amended Counterclaim and opposed the Motion to Dismiss the Supreme Court had not decided to hear *Van Buren*. Rather, the state of the law was that the binding *hiQ Labs, Inc.* case clearly foreclosed the CFAA and GCSPA asserted against H&A, a fact which the District Court specifically pointed out only eleven days prior to Appellee filing the Amended Counterclaim. *See* 2-ER-170.

Because it is clear that Appellee filed the Amended Counterclaim against H&A in bad faith, the District Court should be reversed, and the case remanded.

### 3. *Appellee Engaged In Independently Sanctionable Conduct.*

Although Appellee spends a significant portion of its brief discussing the technicalities of whether the factual and legal underpinnings of the original and Amended Counterclaim were brought in good faith, this is not the only conduct that formed the basis of H&A's original §1927 sanction request.

In addition to the questionable legal and factual basis for asserting claims against the attorney of his client's adversary, Appellee conducted himself with an extreme lack of decorum in doing so. As pointed out in H&A's Opening Brief, a significant portion of the allegation in the Counterclaim and Amended Counterclaim had nothing to do with the factual or legal underpinnings of the CFAA and GCSPA claims, but instead consisted of irrelevant *ad hominem* attacks levied against H&A and others that served no purpose in advancing any cognizable legal theory.

Appellee asserts that it was relevant to make these allegations in order to point out H&A's "business model." However, the CFAA and GCSPA statutes only relate to unauthorized computer access, and the original and Amended Counterclaims on concerned whether H&A use of a third-party service may have crashed 4Internet's servers. Assuming Appellee's client had a good faith basis to assert such claims, it is not clear how Appellee's vicious and slanderous personal attacks in the pleadings and motion practice was necessary to advance claims related to a computer server crash.

The absurdity of this is on full display in Appellee's submissions in this appeal. While portion of Appellee's Opposition brief discusses the narrow issues to be decided, nearly half of the argument section is dedicated to presenting a misleading narrative that, regardless of its veracity, simply has nothing to do with the issue of §1927 sanctions raised on this appeal. Likewise, over two thirds of Appellee's Supplemental Excerpts of Record have nothing to do with the underlying litigation over the Counterclaims, and some of the documents included were not even part of the filings of this case.

Thus, while the frivolity of the initial and Amended Counterclaims themselves are certainly relevant to the issue of sanctions, in a much broader sense, Appellee's actions are unreasonable and vexatious because they not only lack merit but do so in a way that grossly exceed the bounds of common decency. Rather than

take any accountability for his actions, Appellee feigns ignorance by stating that he "is simply at a loss to understand how it is that" such conduct could possibly be considered vexatious when all he did was "reasonably suggest[] that Appellants were using a technology that caused 4Internet harm." Opposition at p. 21.

While the District Court may have refrained from directly deciding one way or another whether this conduct to be vexatious, this Court should not. Rather, this Court should make clear that it is never appropriate to try and gain an upper hand in litigation by using the legal process to unnecessarily harass opposing counsel.

Because it is clear that Appellee filed the Amended Counterclaim against H&A in bad faith, the District Court should be reversed, and the case remanded.

### III. THE FACT THAT DISCOVERY WAS STAYED DURING THE PENDANCY OF THE MOTIONS TO DISMISS IS IRRELEVANT

Finally, Appellee argues that his conduct did not "multiply" the proceedings because "the parties stipulated to a stay of discovery so nothing was filed other than the motion to dismiss" citing *Braunstein v. Ariz. DOT*, 683 F.3d 1177 (9th Cir. 2012), a case which the District Court relied upon. *See* Opposition at pp. 17-18.

Simply because the parties agreed not to engage in discovery does not mean that Appellee's conduct with respect to the initial and Amended Counterclaims and two rounds of motion practice did not vexatiously multiply the proceedings. Rather, H&A had to spend over a year and a half unnecessarily litigating the initial and Amended Counterclaims.

As stated above, the District Court erred in finding that the initial Counterclaim was exempt from §1927 sanctions. Because of this error, the District Court avoided having to make a finding about whether the initial Counterclaim was filed unreasonably or vexatiously.

Additionally, the District Court erred with respect to the Amended Counterclaim since it based its decision solely on the fact that the second Motion to

10

Dismiss was resolved "less than six months" after it was filed and therefore did not multiply the proceedings. 1-ER-18-19. The District Court relied on *Braunstein* as does Appellee in his Opposition. As explained in the Opening Brief, the District Court's reliance on *Braunstein* was misplaced as that case does not stand for the proposition that a court's speed in adjudicating a matter can serve as the sole justification for a finding that otherwise vexatious conduct was not multiplicitous.

Other than *Braunstein*, neither the District Court nor Appellee has cited to any other case or authority suggesting that a court's relative speed in adjudicating a legal matter can negate a party's unreasonable or vexatious conduct. This is likely because such a standard would be unworkable. Court congestion differs significantly across the districts within this Circuit meaning that identical motions may be adjudicated in vastly varying timeframes based solely on availability of resources. Under such a standard, counsel in busier districts are more likely to be sanctioned simply because the judicial resources are spread thinner. Additionally, factoring in judicial speed when considering §1927 sanctions begs the question of how long is too long?

Because the plain language of §1927 is solely focused on the nature of the attorney conduct at issue, it was error for the District Court to base its decision solely on the speed at which it was able to resolve the motion to dismiss. Other than agreeing with the District Court's reasoning, Appellee's Opposition does not provide any additional insight or justification for why such a standard should properly be applied when considering sanctions under §1927.

As such, the District Court should be reversed, and the case remanded for further proceedings.

/ / /

/ / /

/ / /

## IV.  CONCLUSION

For the foregoing reasons, the judgment of the District Court should be reversed, and the case remanded further proceedings.

Dated: July 12, 2023                                  Respectfully submitted,

**/s/ Ryan E. Carreon**
Ryan E. Carreon, Esq.
Cal. Bar No. 311668
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(714) 617-8336
(714) 597-6559 facsimile

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,621 words and 309 lines, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

Dated: July 12, 2023                                Respectfully submitted,

**/s/ Ryan E. Carreon**
Ryan E. Carreon, Esq.
Cal. Bar No. 311668
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(714) 617-8336
(714) 597-6559 facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: July 12, 2023                          Respectfully submitted,

**/s/ Ryan E. Carreon**
Ryan E. Carreon, Esq.
Cal. Bar No. 311668
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(714) 617-8336
(714) 597-6559 facsimile